**Walter D. ADAMS, Plaintiff–Appellant,**

v.

**CSX TRANSPORTATION, INC., Defendant–Appellee.**

No. 89–5346.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 23, 1990.

Decided March 30, 1990.

Howell H. Sherrod, Jr. (argued), Sherrod, Stanley & Goldstein, Johnson City, Tenn., for plaintiff-appellant.

William T. Gamble (argued), Wilson, Worley, Gamble & Ward, Kingsport, Tenn., for defendant-appellee.

Before WELLFORD and GUY, Circuit Judges, and ENGEL, Senior Circuit Judge.

RALPH B. GUY, JR., Circuit Judge.

Plaintiff, Walter Adams, appeals from a United States magistrate's findings of fact and conclusions of law denying the plaintiff's claim against defendant, CSX Transportation, Inc. (CSX), for emotional injury under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* Because we find that the plaintiff is not entitled to recovery under FELA for emotional injury on the facts of this case, we affirm.

## I.

Plaintiff Adams began working for defendant CSX in 1978, and remained with the company until September 23, 1987, when he suffered an emotional breakdown. The plaintiff, universally described as a bright and industrious employee, served as a laborer throughout the course of his tenure with CSX. In addition, the plaintiff acted as a union chairman charged with handling all union matters regarding his trade.

Prior to March 1986, the plaintiff occasionally worked under the supervision of Malone Peterson, a long-time CSX employee. By all estimations, Peterson frequently berated his workers in an effort to spur them to greater productivity.[1] While Pe-

---

1. The magistrate made the following comments in this regard:

    The evidence was uncontradicted that Malone Peterson *often spoke in a loud voice* when addressing his employees, including the plaintiff; that it was very difficult to tell whether Malone Peterson was joking or was serious when communicating with his employees; and that his demeanor was sometimes interpreted as "hateful[."] The undersigned also finds that Malone Peterson told the plaintiff to "get your damned ass to

terson apparently extended his abusive behavior to all of his workers, the plaintiff was one of Peterson's favorite targets.

Despite sporadic exposure to Peterson's supervisory style before March 1986, plaintiff Adams sought and obtained the position of relief laborer on the day shift knowing that the position would entail increased contact with Peterson. After a year of constant interaction with Peterson, the plaintiff exercised his seniority to "kick" a junior man from a job involving three days per week of contact with Peterson. Plaintiff Adams concedes he could have forced the junior man into that slot and taken the night shift, which would have completely removed him from Peterson's control. Instead, the plaintiff chose to retain the position under Peterson's authority until he left work on September 23, 1987.

While under Peterson's control, the plaintiff was compelled to work extremely hard, but not beyond his physical capability.[2] At the same time, the plaintiff was going through an acrimonious divorce and its aftermath as well as a bankruptcy proceeding. Plaintiff Adams became increasingly despondent, and ultimately suffered an emotional breakdown on September 23, 1987. He was hospitalized for three weeks to treat his severe depression precipitated by the stresses of both his work and his personal life. Much of the depression that forced the plaintiff from his job still remains with him and precludes him from returning to the CSX facility in Erwin, Tennessee, where he worked.[3]

To redress the emotional injury allegedly resulting from his supervisor's harassment, plaintiff Adams filed this FELA action against CSX claiming that the company negligently deprived him of an emotionally safe workplace.[4] The defendant moved for summary judgment, but the magistrate denied the motion. A six-day bench trial ensued, after which the magistrate entered findings of fact and conclusions of law resulting in the denial of the plaintiff's FELA claim.[5] The magistrate specifically ruled that the plaintiff's emotional injury was caused (at least in part) by Malone Peterson's conduct, but Peterson's conduct did not rise to an actionable level. The magistrate further concluded that the plaintiff's emotional breakdown was not a foreseeable consequence of Peterson's behavior. Plaintiff contests both of these findings on appeal, while defendant CSX argues that emotional injury is not compensable under FELA.

## II.

Section 1 of FELA, which controls this case, provides in pertinent part that a common carrier engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier[.]" 45 U.S.C. § 51. Although FELA liability is based upon negligence, the statute "does not define negligence, leaving that question to be

work[,"] and on one occasion told the plaintiff that he would tie a toilet to the plaintiff so that he might keep working and not ever leave his work to visit the bathroom. The undersigned also finds that Peterson sometimes referred to the plaintiff as "my nigger" [the plaintiff is white] and used other somewhat "salty" language.

2. The magistrate established this point as a finding of fact. Based upon this determination, the magistrate concluded that "the plaintiff's workplace was not unsafe for physical reasons." This finding has not been challenged on appeal; the appeal focuses on the safety of the workplace from an emotional standpoint.

3. The magistrate expressly held that the plaintiff's emotional problems are genuine, and re-

jected the defendant's position that the plaintiff is a psychological malingerer.

4. The plaintiff halfheartedly argues on appeal that his injury has a physical component as well as a mental component, but the pretrial order to which neither side objected specifically limits the plaintiff's claim to emotional injury.

5. The record does not clearly reflect the nature of the magistrate's authority, but the briefs and the plaintiff's direct appeal from the magistrate's ruling suggest that the district court referred the case "with the parties' consent" for trial and the entry of judgment pursuant to 28 U.S.C. § 636(c)(1). See, e.g., Howes v. United States, 887 F.2d 729, 731 n. 5 (6th Cir.1989).

determined ... 'by the common law principles as established and applied in the federal courts.'" *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949) (citation omitted). This inquiry presents "a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Id.*

The application of FELA's negligence standard to claims for purely emotional injury remains an unsettled matter. *See, e.g., Atchison, Topeka & Santa Fe Ry. v. Buell,* 480 U.S. 557, 567–68, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563 (1987). In *Adkins v. Seaboard Sys. R.R.,* 821 F.2d 340 (6th Cir.), *cert. denied,* 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987), we held that a "claim of an intentional tort resulting in a purely emotional injury is not cognizable under the FELA." *Id.* at 342. Our refusal to recognize a FELA claim for intentional infliction of emotional distress stemmed from FELA's restriction to actions based upon an employer's negligence.[6] *Id.* at 341–42. We considered whether FELA can support a negligent infliction of emotional distress claim in *Stoklosa v. Consolidated Rail Corp.,* 864 F.2d 425 (6th Cir.1988), but we did not provide an answer to the question because we determined that an essential element of the plaintiff's claim was missing.[7] *Id.* at 426. Likewise, in this case we need not decide whether such a cause of action exists under FELA because we find the plaintiff's claim to be deficient in two respects.

■ To prevail on a FELA claim, a plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987). The magistrate found, and we agree, that defendant CSX clearly had a duty to provide a safe workplace for the plaintiff. We also agree with the magistrate's conclusion that CSX's action through Peterson played some part in causing the plaintiff's emotional injury. *Cf. Rogers v. Missouri Pacific R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) (the causation test is whether "employer negligence played any part, even the slightest, in producing the injury" for which the plaintiff seeks recovery); *Green v. River Terminal Ry.,* 763 F.2d 805, 806–07 (6th Cir.1985) (reciting *Rogers* test). The FELA claim in this case is fatally flawed, however, because the plaintiff failed to establish either a breach of the employer's duty to provide an emotionally safe workplace or the foreseeability of his emotional injury.

■ The issue of whether defendant CSX breached its duty to provide plaintiff Adams with an emotionally safe workplace can be resolved by examining the Supreme Court's conception of impermissible harassment under FELA. In *Buell,* the Court identified "unconscionable abuse" as "a prerequisite to recovery" for "purely emotional injury[.]" *Buell,* 480 U.S. at 567 n. 13, 107 S.Ct. at 1417 n. 13. The Fifth

6. Although the Supreme Court has extended FELA to intentional torts such as assault, *see Jamison v. Encarnacion,* 281 U.S. 635, 641, 50 S.Ct. 440, 442, 74 L.Ed. 1082 (1930), "the FELA has not been applied to any intentional torts lacking any physical dimension[.]" *Adkins,* 821 F.2d at 341.

7. Several circuits have considered whether FELA encompasses claims for negligent infliction of emotional injury and have reached a wide variety of conclusions. *Compare Lewy v. Southern Pacific Transp. Co.,* 799 F.2d 1281, 1288 (9th Cir.1986) (reiterating circuit rule that FELA covers claims for negligent infliction of wholly emotional injuries) *with Hammond v. Terminal R.R. Ass'n of St. Louis,* 848 F.2d 95, 96 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989) (foreclosing

action for emotional injuries absent physical contact or threat of physical contact); *see also Moody v. Maine Central R.R.,* 823 F.2d 693, 694 (1st Cir.1987) ("We discern from the *Buell* opinion an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open."); *Netto v. Amtrak,* 863 F.2d 1210, 1214 & n. 4 (5th Cir.1989) (reserving the question of whether FELA extends to purely emotional injuries); *Gillman v. Burlington Northern R.R.,* 878 F.2d 1020, 1025 (7th Cir.1989) (refusing to decide "whether an action for negligent infliction of emotional distress, unaccompanied by physical contact or the threat of physical contact, is cognizable under FELA"); *but see id.* at 1025 (Kanne, J., concurring) ("[N]o claim for relief for negligent infliction of emotional distress exists under FELA.").

Circuit utilized this language to define the type of conduct that amounts to a breach of the employer's duty to furnish an emotionally safe workplace. *See Netto v. Amtrak,* 863 F.2d 1210, 1215 (5th Cir.1989). We similarly hold that an employer has not breached its duty to provide an emotionally safe workplace unless the employer (acting through its agents) engages in "unconscionable abuse" of an employee.[8] In this case, the evidence establishes that Peterson was extremely demanding and often abrasive, yet the plaintiff never lodged a complaint against him or opted to exercise his seniority to switch to a shift outside Peterson's supervision. Moreover, the evidence unequivocally indicates that Peterson's demands were related solely to job performance and were distributed evenly among all the workers under his direct supervision. While Peterson's conduct may have been overbearing, we cannot say that the magistrate erred in finding that "unconscionable abuse" of plaintiff Adams did not occur.

 We also agree with the magistrate's conclusion that the plaintiff's emotional breakdown was not reasonably foreseeable to either CSX officials or to Peterson. We recognize that " '[t]he test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred.' " *Green,* 763 F.2d at 808 (citation omitted). Nevertheless, we find that in this case, as in *Stoklosa,* the "[p]laintiff's extreme reaction ... could not reasonably be foreseen." *Stoklosa,* 864 F.2d at 426. Peterson had worked in a supervisory capacity at CSX for many years prior to the plaintiff's nervous breakdown, and the evidence clearly indicates that Peterson's managerial style had not changed one iota over the years. The plaintiff never lodged any sort of complaint against Peterson (thereby depriving the company of notice that Peterson was causing the plaintiff stress) despite the plaintiff's familiarity through his union activity with the grievance process. In addition, the plaintiff seemed content to work under Peterson's

supervision, thus suggesting to both Peterson and CSX officials that the employment relationship was at least tolerable. Consequently, the evidence supports the magistrate's conclusion that the defendant could not have foreseen the plaintiff's nervous breakdown precipitated (at least in part) by the day-to-day interaction between Adams and Peterson in the workplace. Because "reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence," *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *accord Green,* 763 F.2d at 808 (quoting *Gallick*), the magistrate properly entered judgment for defendant CSX based upon the absence of reasonable foreseeability in this case.

AFFIRMED.

---

**8.** This standard applies to FELA claims based upon allegations of emotionally unsafe workplaces; it does not define the threshold of actionable conduct for physically unsafe workplaces.