**Earline GRIGGS, Plaintiff–Appellant,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, INC., Defendant–Appellee.**

**No. 89–1079.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 16, 1989.

Decided April 3, 1990.

James F. Schouman (argued), Dearborn, Mich., for plaintiff-appellant.

Mary C. O'Donnell (argued), Driggers, Schultz, Herbst & Paterson, Troy, Mich., for defendant-appellee.

Before MERRITT, Chief Judge, NELSON, Circuit Judge, and EDGAR, District Judge.[*]

---

[*] The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

EDGAR, District Judge.

Plaintiff, a black female who is employed as a ticket agent by the defendant, National Railroad Passenger Corporation, Inc. ("Amtrak"), brings this action under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. 51 *et seq.* In her complaint, the plaintiff alleges that Amtrak engaged in a course of racial and sexual discrimination and harassment directed at her. Among her allegations plaintiff lists burdensome transfers, false allegations of theft made against her, and discipline greater than that received by a white co-worker. As a result, plaintiff claims that she suffered depression, as well as physical injuries including neuromuscular problems, migraine headaches, insomnia, and an ulcer. While her complaint originally alleged only intentional conduct on the part of Amtrak, by the time this case came before the district court for a ruling on Amtrak's motion for summary judgment, the plaintiff also contended that Amtrak negligently permitted racial and sexual harassment to occur.[1] This latter allegation is the only one which plaintiff makes before this Court. The district court granted summary judgment to the defendant. We affirm.

Racial and sexual harassment which create an offensive or hostile work environment are actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* *See Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989) (race); *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 62, 106 S.Ct. 2399, 2403, 91 L.Ed.2d 49 (1986) (sex). In this case, the plaintiff makes only a general allegation that her racial and sexual harassment resulted from Amtrak's negligence. The record reveals little about what racial or sexual occurrences there may have been, who may have been responsible for them, or how pervasive they were. In *Meritor*

*Savings Bank,* the Supreme Court declined to provide a definite standard to determine the liability of employers for the racial or sexual conduct of their employees. 477 U.S. at 72, 106 S.Ct. at 2408. The Court did say that employers are not strictly liable for discriminatory harassment by their supervisors, while on the other hand, "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.* While the standard for employer liability in this genre of case under Title VII has not yet been precisely defined, it is nevertheless evident that the facts alleged by the plaintiff are those of which Title VII claims are made. Her belated claim that Amtrak was "negligent" will not serve to take her claim out of the confines of Title VII.

Our interpretation of the FELA and Title VII leads us to conclude that plaintiff's claims are not cognizable under the FELA. The FELA was not designed to create new substantive torts, but to protect railway workers in federal court from common law torts. The discrimination alleged by the plaintiff creates federal liability only because of Title VII. It was not a tort at common law. Moreover, a contrary conclusion would permit evasion of the detailed and specific enforcement scheme created by Title VII to vindicate statutorily proscribed employment discrimination. The intent and design of Title VII have been summarized by the Supreme Court in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974):

> Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the Equal Em-

---

**1.** This contention does not appear in any written amendment to the complaint, but is contained in plaintiff's response to Amtrak's motion for summary judgment, and it was recognized and dealt with by the district court.

ployment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

*Id.* at 44, 94 S.Ct. at 1017 (citations omitted).

In *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Supreme Court held that 42 U.S.C. § 1985(3) cannot be used to enforce rights created by Title VII. Otherwise, said the Court, a plaintiff "could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." *Id.* at 376, 99 S.Ct. at 2351. The Court also noted that the short and precise time limitations for asserting employment discrimination claims might be altered if a plaintiff proceeds outside Title VII. This is certainly the result in the present case where the plaintiff alleges that the discriminatory harassment began in 1986 and earlier, and where this suit was not brought until August, 1987, outside Title VII's general 180–day time limit for the filing of charges with the Equal Employment Opportunity Commission. 42 U.S.C. § 2000e–5(e). Furthermore, since the plaintiff neither invoked Title VII, nor utilized available state fair employment laws to address her racial and sexual harassment claims, there has been no opportunity to resolve the plaintiff's claims by conciliation, as is contemplated by Title VII.

The Supreme Court reached a similar result in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), when it held that Title VII provides the exclusive remedy for employment discrimination claims advanced by federal employees. *Id.* at 835, 96 S.Ct. at 1969. Moreover, this circuit in *Day v. Wayne County Board of Auditors*, 749 F.2d 1199 (6th Cir.1984), has found that 42 U.S.C. § 1983 cannot be used to assert claims which are derived from Title VII. As the court in *Day* said:

It would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can bypass all of the administrative processes of Title VII and go directly into court under § 1983.

*Id.* at 1204.

In *Novotny*, the Supreme Court's conclusion that 42 U.S.C. § 1985(3) was not a congressionally intended remedy for the redress of Title VII rights was buttressed by its observation that 42 U.S.C. § 1985(3) is a remedial statute which itself does not create statutory or contractual rights independent of those created by Title VII. 442 U.S. at 376, 99 S.Ct. at 2351. The Court thus distinguished *Alexander v. Gardner–Denver Co.* which, in permitting an employee to pursue a discrimination claim both under a collective bargaining agreement and under Title VII, found the employee's contractual rights to be distinctly separate from the employee's Title VII statutory rights.

Like 42 U.S.C. § 1985(3), the FELA is distinctly a remedial statute. It creates no substantive rights, but merely makes the common law negligence remedy available to railroad employees in suits against their employer for job related injuries, and takes away from the employer certain common law defenses. There is no legislative history supporting the proposition that Congress in enacting the FELA had any thought of providing a remedy for racial or sexual harassment.

The FELA was enacted in 1908; Title VII in 1964. In dealing with the interplay between 42 U.S.C. § 1981, enacted in 1866, and Title VII, the Supreme Court in *Patterson v. McLean Credit Union* recently admonished that:

We should be reluctant, however, to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute. That egregious racial harassment of employees is forbidden by a clearly applicable law (Title VII), moreover, should lessen the temptation for this Court to twist

the interpretation of another statute (§ 1981) to cover the same conduct.

109 S.Ct. at 2375 (citations omitted).

Likewise, we cannot broadly read the earlier enacted FELA to provide a remedy for racial and sexual harassment when Congress has provided that remedy in Title VII.

The judgment of the district court is AFFIRMED.