Patricia A. **SMOLSKY**

v.

**CONSOLIDATED RAIL CORPORATION.**

Civ. A. No. 90–4634.

United States District Court,
E.D. Pennsylvania.

Decided Dec. 11, 1991.

Filed Dec. 12, 1991.

Jean M. Handley, G. Sander Davis, William L. Myers, Jr., G. Sander Davis and Associates, Philadelphia, Pa., for plaintiff.

Barry Simon, Schnader, Harrison, Segal & Lewis, Eric Hoffman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court is the defendant's Motion for Summary Judgment, plaintiff's response and defendant's reply. For the following reasons defendant's motion is DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this case was filed on July 16, 1990 and contains two counts. One count alleges negligent infliction of emotional distress under the Federal Employers' Liability Act (hereinafter "FELA") and the other alleges sexual discrimination/hostile work environment under Title

VII of the Civil Rights Act of 1964 (hereinafter Title VII). The defendant has filed a motion for summary judgment as to both counts. The Court will not restate the facts of this case at length as the parties have already done so in their briefs. As will become apparent, most of the facts and characterizations are strongly disputed, especially regarding the incidents of harassment. A general outline will be helpful for understanding the posture of the parties. The facts which are not disputed by the parties are summarized by the Court as follows.

The plaintiff, Patricia A. Smolsky (hereinafter "Smolsky"), was an employee at defendant, Consolidated Rail Corporation (hereinafter "Conrail"), during all times relevant to this matter. Smolsky is still an employee at Conrail. She was employed during all relevant times as a clerical worker and remains so employed. For two days a week for the period March 13, 1989 to June 14, 1989, Smolsky was supervised by Dominic Scatasti (hereinafter "Scatasti"). During this time period, Smolsky alleges she was subject to sexual and non-sexual abuse by Scatasti. The defendant disputes these allegations. The defendant does admit one incident of non-sexual harassment. Scatasti removed the plaintiff's coat and purse from her office to his so that she would have to retrieve them from his office before leaving. The reason for the incident is disputed. During this period both sides agree that Smolsky complained to Jim Knapp about this treatment approximately three times. Jim Knapp was a supervisor of equal responsibility as Scatasti. She also complained about Scatasti's harassment of her to Vince Frascino, another supervisor. She also complained to her union representative who relayed the complaint to Jim Knapp. One of defendant's employees, Jeannette Hatton, who was knowledgeable of defendant's internal review procedures, thought that Smolsky took appropriate action to register her complaints. Eventually, Scatasti was reassigned to another position. The reason for this reassignment is also disputed. During the time Scatasti supervised her and allegedly harassed her, she alleges that she suffered breakdowns at home and fits of crying. Upon hearing a rumor that he might return, she marked off sick for three months. After she marked off sick, she complained of aggravated neck problems and other emotional injuries. She then chose to pursue her rights under defendant's formal complaint procedures. Scatasti received a letter of reprimand from the defendant. Not satisfied, Smolsky filed a complaint with the Equal Employment Opportunity Commission. This action followed.

## DISCUSSION

### A. Standard

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). When considering a motion for summary judgment, this Court shall grant such motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.1988). When reviewing a motion for summary judgment, this Court should resolve all reasonable doubts and inferences in favor of the nonmoving party. *Arnold Pontiac—GMC, Inc. v. General Motors Corp.*, 700 F.Supp. 838, 840 (W.D.Pa. 1988).

The inquiry into whether a "genuine issue" of material fact exists has been defined by the Supreme Court as whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material." *Id.* If the court determines

that a material issue of fact remains for the jury to decide, the court cannot grant summary judgment.

## B. *FELA Claim*

### 1. Title VII Does Not Preempt The FELA

■ The defendant first raises the argument that Title VII preempts the FELA in this action and that the plaintiff only has rights under Title VII. Basically, the defendant argues that since the plaintiff is claiming sexual discrimination and harassment, she should not be able to also claim that the defendant negligently inflicted emotional distress upon her as a result of this discrimination. The defendant finds support for this argument in *Griggs v. National Railroad Passenger Corp.*, 900 F.2d 74 (6th Cir.1990). However, a careful reading of *Griggs* demonstrates that it does not apply to this case. The Sixth Circuit in *Griggs* held that the plaintiff's discrimination claims were not cognizable under the FELA. *Id.* at 75. The plaintiff in *Griggs* only alleged racial and sexual harassment as a basis for a discrimination claim which she pursued under the FELA, essentially a tort of discrimination. *Id.* The court focused on the fact that the alleged tort underlying the FELA claim was not a tort recognized at common law, such as negligent infliction of emotional distress, but something different, a tort of discrimination. *Id.* The court reasoned that Congress did not intend to create new substantive torts under the FELA, but only to have common law torts covered by the FELA. *Id.* Discrimination was not a common law tort and, therefore, it was not cognizable under the FELA. *Id.* The rationale of *Griggs* was not that Title VII preempted the FELA, but that the FELA cannot be used to create new substantive rights because it is only a remedial statute.

The Supreme Court in *Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), had an opportunity to review the interplay between the Railway Labor Act (hereinafter "RLA"), 45 U.S.C. § 151, and the FELA, 45 U.S.C. § 51. The question in *Buell* was whether a plaintiff who pursued a grievance under the RLA is subsequently deprived of his right to bring an action under the FELA. *Id.* at 559, 107 S.Ct. at 1411. The claim brought under the FELA arose out of the same facts as the RLA grievance. *Id.* The Supreme Court recognized that the FELA is defined in broad language and the courts have construed it even broader. *Id.* at 561, 107 S.Ct. at 1413. The courts have adopted a liberal application of the statute to advance the goals of Congress. *Id.* at 562, 107 S.Ct. at 1414. These goals are to provide a federal remedy for railroad workers injured by the negligence of their employer or fellow employees. *Id.* at 561, 107 S.Ct. at 1413. With these goals in mind the Supreme Court held: "The fact that an injury otherwise compensable under the FELA was caused by conduct that may have been subject to arbitration under the RLA does not deprive an employee of his opportunity to bring a FELA action for damages." *Id.* at 564, 107 S.Ct. at 1415. The Supreme Court found that the difference in the remedy available under the RLA and the FELA was critical to determining that the RLA should not deprive the employee of her right to also pursue an action for damages. *Id.* at 565, 107 S.Ct. at 1415. The Supreme Court further found "[t]here is no basis for assuming that allowing FELA actions for emotional injury will wreak havoc with the RLA." *Id.* at 566, 107 S.Ct. at 1466. This Court considers *Buell* not *Griggs* to be the starting reference for analysis of whether Title VII should preempt the FELA.

Title VII provides employees with certain rights in order to remedy discrimination in the workplace. The statutory scheme for resolving these claims involves administrative review and possible administrative enforcement of the employee's rights. Although addressing different problems, Congress has enacted both the RLA and Title VII to deal with employer-employee relations and both statutes provide very comprehensive systems to resolve disputes. *Buell*, 480 U.S. at 562, 107 S.Ct. at 1414 (RLA provides elaborate administrative framework for resolving major and minor disputes); *Griggs*, 900 F.2d at 75–76 (Title

VII created a detailed and specific enforcement scheme to vindicate statutory rights. Federal and State agencies established to provide opportunity for out of court settlement procedures). If the RLA cannot preempt the FELA, there is no reason which this Court has found which would require that Title VII be able to do so. The remedies available under Title VII such as backpay and reinstatement do not adequately advance the goals of Congress in the FELA of allowing the plaintiff to recover for the negligent acts of the defendant. The difference in remedies was a concern of the *Buell* Court and a basis for their decision to find that the RLA did not preempt the FELA. Simply because a worker has suffered an injury which she may be able to pursue under another narrower federal statute should not deny recovery under the FELA. *Buell,* 480 U.S. at 565, 107 S.Ct. at 1415. The broad remedial goals of Congress stated in the FELA would not be advanced if the Court takes the position of the defendant. Title VII and the FELA advance separate and distinct Congressional goals, and the availability of Title VII relief does not deprive a plaintiff of her FELA rights. *Id.*

The plaintiff in this case is alleging a common law tort, negligent infliction of emotional distress. Such a claim is recognized under the FELA and does not result in the creation of a new substantive tort. *Plaisance v. Texaco, Inc.,* 937 F.2d 1004 (5th Cir.1991). Although the same circumstances may give rise to both a claim under Title VII and a claim for negligent infliction of emotional distress, the elements of each claim are different and proof of one does not necessarily prove the other. By allowing the plaintiff to proceed with both a FELA claim for negligent infliction of emotional distress and a Title VII claim for discrimination, the Court does not create a substantive tort of discrimination which was the concern of the *Griggs* court. *Griggs,* 900 F.2d at 76. On the contrary, the Court simply recognizes that the harassment and discriminatory treatment which may give rise to a Title VII claim may also be sufficient to state a claim for negligent infliction of emotional distress.

Following the analysis developed in *Buell,* this Court must allow the plaintiff to pursue her FELA remedies in addition to her Title VII remedies. To hold otherwise would be contrary to the intent of Congress and the directive of the Supreme Court in *Buell.*

This approach has also found support among the state courts when considering whether state discrimination statutes have preempted state common law tort claims based on similar facts. *Helmick v. Cincinnati Word Processing, Inc.,* 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989). The *Helmick* court noted that there are different standards of proof and different elements to prove as to discrimination claims and tort claims. The court also found that Title VII does not preempt common law claims when they are brought as pendent claims in federal court. 543 N.E.2d at 1215. Outside the FELA context, federal courts have allowed Title VII claims to proceed along with state common law tort claims under pendent jurisdiction. *Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524 (11th Cir.1983). It would seem to create an anomalous situation if plaintiffs who were not covered under the FELA could raise Title VII and common law tort claims but employees covered under the FELA were restricted to Title VII. Congress clearly did not intend to expand the substantive rights of railroad workers with the FELA. Congress merely determined that the common law rights of the railroad workers would be heard in federal court. However, Congress did not intend to punish them by restricting them to only one remedy while all other workers could pursue a number of remedies.

The decision of the Fifth Circuit in *Wilson v. Zapata Off-Shore Co.,* 939 F.2d 260 (5th Cir.1991), indicates the merit of the approach the Court takes today. In *Wilson* the court held that Title VII did not preempt a FELA claim for negligent infliction of emotional distress based on discriminatory treatment. *Id.* at 265. Contrary to the interpretation provided by the defendant, this decision was not simply based on the fact that physical harassment was al-

leged in *Wilson* and not in *Griggs.* In fact, the plaintiff alleged harassment of both sexual and non-sexual character. *Id.* The court noted that some of the conduct could have been actionable even if Title VII was not enacted, and thus the FELA could not be preempted by Title VII. *Id. Wilson* also decided not to follow *Griggs* for the same reason the district court in *Masiello v. Metro–North Commuter Railroad,* 748 F.Supp. 199, 204 (S.D.N.Y.1990) declined to follow *Griggs. Griggs* failed to follow the directive of the Supreme Court in *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), to interpret the FELA broadly to protect the worker. *Wilson,* 939 F.2d at 265. The inquiry is not whether Title VII also applies to the facts of the case, but whether the plaintiff has established a claim under the FELA. *Masiello,* 748 F.Supp. at 204.

The facts in the present case raise Title VII and FELA claims. The harassment was both sexual and non-sexual in nature. Title VII augments the protections of the FELA, as it augments the common law and state law remedies provided to all workers in this country. The presence of these additional remedies does not deprive the plaintiff of her FELA rights. Based on this Court's analysis of the *Buell* decision and the FELA, the Court holds that Title VII does not preempt the FELA claim of the plaintiff. To hold otherwise would not only be contrary to the will of Congress and the Supreme Court, but it would also place railroad workers at a disadvantage as to other workers who can pursue both statutory and common law claims.

### 2. Emotional Distress Recoverable Under The FELA

Given that the FELA covers the claims of the plaintiff, the defendant next argues that the FELA does not allow for claims based on negligent infliction of emotional distress and, even if it did, the plaintiff has failed to meet her burden. Both of these arguments must fail. The Court notes that the plaintiff is not pursuing a claim for intentional infliction of emotional distress, and the Court will not address any of the arguments on that point. (Plaintiff's Brief at pg. 54 n. 18).

The tort of negligent infliction of emotional distress is recognized under the FELA. *Plaisance v. Texaco, Inc.,* 937 F.2d 1004, 1009 (5th Cir.1991).[1] *See also Alabama Great Southern Railroad Co. v. Jackson,* 587 So.2d 959 (Ala.1991).[2] The court stated: "an emotional injury can be every bit as harmful, debilitating, and destructive of the quality of one's life as a physical injury." *Plaisance,* 937 F.2d at 1009. The court in *Plaisance* further held that physical injury or physical contact was not required as an element of negligent infliction of emotional distress.[3] *Id.* The court reviewed the decision in *Buell* and found that the Supreme Court had left the decision on this issue to the circuits and as guidance stated that the FELA is to be broadly construed. *Id.* at 1006–07. The court then considered the decisions of the other circuits on this issue and noted that none of them had directly addressed the

---

1. Claims under the Jones Act, 46 U.S.C. § 688, are brought pursuant to the same statutory authority as FELA claims. 46 U.S.C. § 688; *Plaisance v. Texaco, Inc.,* 937 F.2d 1004, 1006 (5th Cir.1991). Although *Plaisance* concerns the right of seamen under the Jones Act, its authority and analysis are based on the FELA and the decision is directly applicable to this case.

2. The Supreme Court of Alabama reviewed the decisions of the circuits in determining an issue similar to that of *Plaisance.* The court found that a majority of the courts considering the issue have held that the FELA provides a remedy for negligent infliction of emotional distress, however, they have denied relief because the plaintiff had failed to sustain the burden. In the *Jackson* case, the Alabama Supreme Court considered facts which are similar in certain ways to the facts in the present case, although not dealing with the harassment but with the foreseeability issues.

3. The Seventh Circuit requires physical contact before allowing for recovery for emotional distress. *Ray v. Consolidated Rail Corp.,* 938 F.2d 704, 705 (7th Cir.1991), *petition for cert. filed,* October 21, 1991. This Court considers the liberal application of *Plaisance* to be more consistent with the Supreme Court's decision in *Buell* and the intent of Congress and, therefore, declines to follow the *Ray* decision.

issue of recovery for emotional injuries under the FELA. *Id.* at 1008–09.

The two decisions of the United States Court of Appeals for the Third Circuit on this issue have not directly addressed the issue. In the first decision, the court declined to allow recovery for emotional distress where the injuries were caused by normal working conditions encountered by all employees. *Holliday v. Consolidated Rail Corp.*, 914 F.2d 421, 424 (3d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991).[4] The court noted that it did not hold that there could never be a recovery for emotional distress under the FELA nor did it hold that some physical impact was required. *Id.* at 426–27. The court held that on the facts presented, the plaintiff could not recover regardless of the test adopted. *Id.* at 427. The court's decision was not based on whether there was a right to recover, but whether the injuries complained of were foreseeable. *Id.* at 426. The court did recognize that under the right circumstances, emotional distress could be recovered under the FELA.[5] This Court would agree that general working conditions which result in stress does not present a situation which is actionable under the FELA. *Holliday* is distinguishable from the present case, because the plaintiff in this case did not suffer from general working condition related stress as in *Holliday* but from a sustained and intentional campaign of harassment by a supervisor. This situation can be actionable under the FELA as negligent infliction of emotional distress.

The second decision of the Third Circuit regarding the recovery of emotional distress under the FELA again was confined to the specific facts of the case and held on those facts there could be no recovery for emotional distress under any test. *Outten v. National Railroad Passenger Corp.,* 928 F.2d 74, 78–79 (3d Cir.1991). There the court reviewed all of the possible theories advanced for recovery of emotional distress and found that the plaintiff's claim would not be recoverable under any of them. *Id.* Again the decision also appeared to be based on the lack of foreseeability between the alleged injuries and the alleged negligence.[6] *Id.* at 79. This decision did not

**4.** The facts of *Holliday* are summarized as follows. The plaintiff had been assigned to a job classification to which he did not feel qualified. He indicated that he did not feel comfortable with his qualifications for this job, and he made frequent mistakes. As a result of his new position, he began to suffer emotional problems and associated physical manifestations. There was evidence that the stress of his job was the cause. *Holliday,* 914 F.2d at 422. This Court notes that the plaintiff was suffering as a result of the general working conditions and not as a result of specific action by the defendant. *Id.* at 425. Stress as a result of working in a stressful job was not intended to be actionable, and this concern was a primary foundation for the court's opinion. *Id.*

**5.** Defendant argues in its reply that the Third Circuit has stated that sexual harassment alone cannot rise to a level of outrageousness sufficient for intentional infliction of emotional distress. *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990). This is not a case involving intentional infliction of emotional distress. Under state law such a claim requires more outrageous behavior than a claim for negligent infliction of emotional distress. Defendant's further reliance on the portion of the *Holliday* opinion where the court states that if intentional conduct is not sufficient to prove emotional distress the negligent conduct is also not sufficient is misplaced. 914 F.2d at 426. The *Holli-*

*day* court was comparing intentional conduct in another case to the alleged conduct in the case before the court. *Id.* The court was not stating that a plaintiff has to prove the level of outrageousness required for intentional infliction of emotional distress when the claim is actually for negligent infliction of emotional distress. Moreover, in this case there are allegations by plaintiff Smolsky of sexual and non-sexual harassment which are supported in the record. Summary judgment would be inappropriate because of the genuine dispute among the parties as to the degree and frequency of the harassment.

**6.** The facts of *Outten* similarly would provide no basis for relief under the FELA. The plaintiff claimed emotional injury as a result of his knowing that a train crash was about to happen and his fear for his life. The accident took place a mile away from him and he did not even observe it. The plaintiff was unable to work for four weeks as a result of the fear. 928 F.2d at 75–76. The court considered these facts as completely insufficient to state a claim for negligent infliction of emotional distress. Even the plaintiff conceded that to allow his claim would extend the law beyond where any court has allowed recovery for emotional distress. *Outten,* 928 F.2d at 79.

hold that the FELA never would permit a recovery for emotional distress, but found that the plaintiff's claim did not support such recovery. As the court in *Plaisance* noted, the Third Circuit has not directly addressed the issue left open by the *Buell* decision. 937 F.2d at 1008.

The decisions of the circuits seem to allow a recovery for emotional distress under the FELA, but they would require a substantial showing of more than simply stress related to general working conditions. The court in *Plaisance* decided that the better course is to permit the cause of action and then decide whether based on the specific facts of the case if the particular claim is viable. Such an approach is suggested by the Supreme Court in *Buell* when the Court states: "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Buell*, 480 U.S. at 568, 107 S.Ct. at 1417. Considering the specific facts of this case, it is clear that this is not a situation involving stress as a result of general working conditions. Nor is the alleged negligence so removed from the plaintiff that there is hardly a tenuous connection.

The plaintiff and the defendant have each found substantial support for their positions in the decisions of the district courts. This Court adopts the approach developed by the *Plaisance* court and those district courts which allow recovery under the FELA for negligent infliction of emotional distress. In addition to the Fifth Circuit, the Ninth Circuit allows recovery for purely emotional injuries. *Taylor v. Burlington Northern R. Co.*, 787 F.2d 1309, 1313 (9th Cir.1986). This approach is consistent with the Supreme Court decision in *Buell*. A person who suffers emotional injuries due to the negligence of another should not be denied recovery simply because there is a danger of false claims, a possibility of remote or unforeseeable consequences, and possibly temporary injuries. *Plaisance*, 937 F.2d at 1010. The *Plaisance* court stated "[t]here need be little reminder of the mandated liberal interpretation to be ascribed to the FELA and the

Jones Act." *Id.* at 1011 (citing *Buell*, 480 U.S. at 561–62, 107 S.Ct. at 1413–14). A rule which allows recovery for true and significant mental injuries "is best attuned to that mandate." *Id.* The court adopted a standard allowing recovery under general objective negligence principles. *Id.* at 1010. This is the standard which the Court will apply here to determine whether there is a genuine issue of material fact which would warrant summary judgment.

### 3. A Genuine Issue of Material Fact Exists

■ In order to recover for negligent infliction of emotional distress the plaintiff must prove all of the regular elements of a negligence cause of action. *Plaisance*, 937 F.2d at 1010–11. At the summary judgment stage, the defendant must demonstrate that there is no genuine issue of material fact remaining on at least one of the required elements and that the issue is resolved in its favor. Duty, breach, foreseeability and causation are the required elements. *Adams v. CSX Transportation, Inc.*, 899 F.2d 536, 539 (6th Cir.1990). Duty is clearly established as the FELA requires the defendant to provide a safe workplace for plaintiff. *Id.* The facts as summarized above illustrate that both sides have widely divergent views of the frequency and degree of the alleged harassment. Both sides can cite to considerable support for their respective positions in the depositions and in affidavits. There is no need for the Court to restate the positions of either side. Thus, with regard to the element of breach of duty there is clearly a genuine issue of material fact. The plaintiff has demonstrated that there is a genuine issue of material fact as to her injuries and the cause of those injuries. The depositions and the affidavits of the plaintiff are sufficient at this stage to prevent summary judgment as to the elements of causation and damages.

The defendant argues for summary judgment on the basis that there can be no genuine issue of material fact with regard to foreseeability. Contrary to the defendant's argument there is substantial evi-

dence of foreseeability of the injuries of the plaintiff as a result of defendant's conduct. The defendant admits it knew of the plaintiff's past emotional problems. (Defendant's Brief pg. 5 n. 3) (Severe anxiety depression caused plaintiff to miss two years of work). The individual who allegedly harassed the plaintiff indicated in his deposition that, when he was assigned to his position, Conrail assigned him because of his intimidating management style. Not only did they know of his propensities but promoted them in order to bring certain offices in line. In addition, the plaintiff did complain several times to managers of equal responsibility of Scatasti but to no avail. The alleged harassment continued unabated until Scatasti was reassigned to another office. The evidence put forth by the plaintiff indicates that the defendant knew the plaintiff had emotional problems or the propensity for such, assigned a manager with an abusive and intimidating style to supervise her for the purpose of intimidation the employees, that the assigned manager allegedly concentrated his harassment on the plaintiff through non-sexual abuse and sexual harassment, and that the plaintiff complained to management level employees of the defendant which either provided actual or constructive nature of the potentially harmful situation which was developing. Based on that summary of the plaintiff's position which has plausible support in the record, the Court cannot say that there is no genuine issue of material fact as to foreseeability. Inasmuch as the defendant disputes the characterization of the facts, it is for the jury to determine what is the truth.

The present case is unlike the cases cited by the defendant on the issue of foreseeability. In *Adams* the plaintiff was subject to an abusive management style as was everyone else in his section. 899 F.2d at 538. Plaintiff never complained of the abusive treatment and even seemed content to work under the abusive manager. *Id.* at 540. Further, the court required a level of unconscionable abuse which the plaintiff could not prove. *Id.* This is clearly not the case here. Continuous sexual harassment by a supervisor along with non-sexual harassment directed solely at the plaintiff may rise to a level of unconscionable abuse. Congress has made clear its position at least on the issue of whether sexual harassment is unconscionable by enacting Title VII. There is no doubt in this Court's mind that subjecting an employee to a hostile workplace as a result of sexual harassment can be unconscionable abuse. Such abuse may not rise to the level of extreme or outrageous conduct required for intentional infliction of emotional distress, but it is sufficiently unconscionable when combined with the non-sexual harassment to defeat summary judgment on negligent infliction of emotional distress. In addition, in this case there is an issue of notice to the defendant of the problem, which was not present in *Adams*. Similarly, the facts of the *Elliott v. Norfolk & Western Railway Co.*, 910 F.2d 1224, 1225–26 (4th Cir. 1990), are not on point. The plaintiff complained of anxiety as a result of inaccurate statements in her file and fear that she may have to perform heavy lifting. *Id.* The conduct in *Elliott* cannot compare to the allegations of abuse and sexual harassment in the present case. The Court does not intend to imply that it considers the position of either side to be the correct version. The Court merely recognizes that both sides have support in the record and as such summary judgment is not appropriate.

Summary judgment on the plaintiff's FELA claim is not appropriate. The extensive factual record developed by the parties indicates to the Court that there is are genuine issues of material fact remaining. This case does not present the concerns of the *Holliday* and *Outten* courts about abusive and fraudulent litigation. This case involves serious allegations of a campaign of systematic and abusive harassment, sexual and non-sexual, by a supervisor of an employee. Such activity, if proven at trial, would establish negligent infliction of emotional distress by the employer. Denying summary judgment in this case does not open the floodgates of litigation, but rather it allows a claim of substantial merit to be

heard by a jury. Summary judgment on the FELA claim is denied.

### C. *Title VII Claim*

The plaintiff claims that the sexual harassment by Scatasti created a hostile work environment which is actionable under Title VII. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Court notes that at this stage if the plaintiff demonstrates that there is a genuine issue of material fact, summary judgment is not proper. The Court will address the Title VII issues as the defendant has raised them. First, is the defendant-employer, Conrail, liable for the actions of its employee, Scatasti. Second, was a hostile work environment created. Considering the law in this area as set forth in *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990), and the widely divergent views of the facts presented by each party, it is clear to the Court that summary judgment is not appropriate.

Unlike the FELA issues, the law in this area of Title VII is clear at least in the sense that there are five established elements for a hostile work environment claim:

> (1) the employees suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

*Andrews,* 895 F.2d at 1482. The fifth element concerns the liability of defendant Conrail and the first four determine whether a hostile work environment is present.

#### 1. Liability of Defendant Conrail

■ In footnote 17 on page 41 of the defendant's memorandum in support of the motion for summary judgment, the defendant submits that the issue of foreseeabil-

ity under the FELA resembles the issue of agency and respondeat superior under Title VII. Although the analysis is not exactly the same, many of the relevant facts are similar, and a similar result is required as to this issue. Liability for the Title VII violations exists where the defendant knew or should have known of the harassment and failed to remedy the situation promptly. *Andrews,* 895 F.2d at 1486. If management level employees have actual or constructive knowledge of the situation and fail to remedy it, the employer can be liable. *Id.* In the *Andrews* case, the court noted that middle level management was aware of the harassment problem and, although it was not condoned, the management acquiesced in the discrimination. *Id.*

In a case not involving a hostile working environment situation, the Sixth Circuit addressed several of the arguments of the defendant on this agency issue.[7] *Yates v. Avco Corp.,* 819 F.2d 630 (6th Cir.1990). The court stated that employers would not be insulated from liability simply because of absence of notice or because the employer had established internal complaint and review procedures. *Id.* at 634. The existence of internal procedures and the potential lack of notice are all facts which must be considered in the totality of the circumstances to determine if respondeat superior liability applies. *Id.* The court also noted that the Supreme Court in *Vinson* made it clear that when a supervisor is involved notice is not an absolute requirement. *Id.* at 636 (citing *Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408). Determination of whether agency principles should apply requires consideration of: *"when* the act took place, *where* the act took place, and whether it was *foreseeable." Id.* (emphasis court's).

The defendant relies upon three circuit court decisions in attempting to deny respondeat superior liability in the present case. In *Hirschfeld v. New Mexico Corrections Department,* 916 F.2d 572, 579 (10th Cir.1990), the court was not considering a

---

7. The defendant argues that *Yates* was decided on grounds not applicable to this case. On the contrary, *Yates* deals with a situation involving a supervisor harassing an employee, and the level of notice required to an employer under that situation is similar to the present case. 819 F.2d at 636.

situation involving a supervisor. A co-worker was harassing another co-worker, and upon complaint to the supervisor remedial action was taken. *Id.* The case of *Swentek v. USAir, Inc.*, 830 F.2d 552 (4th Cir.1987) was also a situation involving harassment by a co-worker and not a supervisor. The only case cited which deals with harassment by a supervisor is *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir.1989). However, in *Steele*, the record was clear that as soon as management was aware of a problem it was corrected. *Id.* at 1316.

■ Before applying the law to the facts of this case, a synthesis of the law on what Title VII requires for agency principles is necessary. The plaintiff is not required to relay her complaints to all levels of management or always proceed through the formal procedures available. Where the defendant places the responsibility for reporting and enforcing sexual harassment is not determinative of who must be notified for agency principles. Further, where the harassment is apparent to all others in the workplace, supervisors and co-workers, this may be sufficient to put the employer on notice of the sexual harassment. The standard is not one of actual knowledge but basically a negligence standard. *Hirschfeld*, 916 F.2d at 577. At the summary judgment stage, summary judgment is not proper if a genuine issue of material fact exists whether the employer was negligent in "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Id.*

**8.** Defendant's statement that it would have required extra-sensory perception to have known of the alleged sexual harassment is disingenuous at best. The defendant sent Scatasti there aware of his management style and intending for him to use that style. Other supervisors at his level knew of the complaints and all other employees were aware of the situation. These circumstances could provide a basis for constructive notice if proven at trial.

**9.** The defendant in its reply makes an argument concerning the admissability of the evidence which the plaintiff offers in support of her

■ As was apparent in the Court's discussion of foreseeability, the parties hold widely divergent views on the facts relating to Conrail's notice of the harassment. The parties both agree that the plaintiff did complain to another supervisor about Scatasti. The plaintiff alleges and the defendant disputes that she also complained to another supervisor and to her union representative. It is also clear from the depositions attached as exhibits that every other employee in the workplace knew what was happening and the effect that it was having on the plaintiff.[8] Defendant's argument that this is an insufficient basis for notice is the type of conclusory statement of which the defendant complains of the plaintiff in the reply. The defendant not only disputes the facts which the plaintiff alleges, but also whether those facts are sufficient for notice. The Court is required to consider the totality of the circumstances when considering whether respondeat superior applies. This requires a consideration of all of the facts surrounding the alleged harassment, the relevant positions of the parties and the possibility of constructive notice. The parties can both cite to substantial support for their respective positions in the depositions and affidavits[9], and their positions on the facts are widely divergent. In light of that, it is clear to the Court that a genuine issue of material fact remains as to Conrail's liability for the alleged hostile work environment.

2. Presence of a Hostile Work Environment

■ The defendant in its brief admits that the determination of whether there is a hostile work environment is a fact intensive analysis. *Campbell v. Board of Re-*

claim. While it is true that Rule 56 would require admissible evidence to be offered by the plaintiff, the Court is not going to require plaintiff to present that evidence as if the motion for summary judgment was a trial. The use of affidavits and deposition testimony would be severely hampered by requiring all evidence presented to comply strictly with the standards of a trial. Such a rule would limit the effectiveness of Rule 56 summary judgment by requiring extensive foundation for all statements made in the motion or the response.

*gents of State of Kansas,* 770 F.Supp. 1479 (D.Kan.1991). Defendant must show that as a matter of law there are no genuine issues of material fact and, therefore, no hostile work environment was created. The defendant is not able to do this. As stated before but proper for repetition, the parties each have widely divergent views of the facts which can be supported by the record. If the Court takes the plaintiff's version of the facts as true, the Court is not able to say that as a matter of law, no hostile work environment was created.

"Psychological well-being is a term, condition, or privilege of employment within the meaning of Title VII, but a claim based on psychological harm 'requires a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment.' " *Collins v. Baptist Memorial Geriatric Center,* 937 F.2d 190, 195 (5th Cir.1991). The harassment is severe and pervasive where it "creates an intimidating, hostile or offensive environment, or where it unreasonably interferes with work performance." *Ellison v. Brady,* 924 F.2d 872, 876-77 (9th Cir.1991). Sexual harassment which unreasonably interferes with work performance can create an actionable hostile work environment. *Id.* The Ninth Circuit noted that the court must consider the harasser's conduct in determining what is severe and pervasive. *Id.* at 878. Employees do not have to endure harassment to the point where they suffer anxiety and psychological problems for the harassment to be actionable under Title VII. *Id.* What is severe and pervasive should also be viewed at from the perspective of the victim and not the harassing individual. *Id.* In a sex discrimination case, the court considers the activity from the viewpoint of the reasonable woman to protect the employer from the hypersensitive employee. *Id.* at 879. This combination of subjective and objective standards was formulated by the Third Circuit in *Andrews.* 895 F.2d at 1483.

The facts of the *Ellison* case demonstrate the merit of viewing the facts from the victim's perspective and what level of harassment can be actionable under Title VII. The female plaintiff received several requests for dates from her supervisor which she rejected. She later found a note from him stating his affection for her. There were subsequent attempts to contact the plaintiff by the supervisor despite warnings from management to leave her alone. There was no allegation that her ability to advance or that her employment record was affected by her rejection of her supervisor. The complaint was that as a result of the supervisor's conduct a hostile work environment was created. *Ellison,* 924 F.2d at 873-875. The court determined that as a matter of law they could not find that the plaintiff was hypersensitive for feeling harassed by the conduct of her former supervisor. *Id.* at 880.

This position finds substantial support in the Third Circuit's decision in *Andrews.* It is only necessary to show that gender was a substantial factor in the discrimination, and intimidation or hostility toward women can result from conduct not sexually explicit. *Andrews,* 895 F.2d at 1485. The Court must not limit the analysis to only intimidation or ridicule of a sexual nature. *Id.* The use of derogatory or offensive terms regarding women generally or the unwanted presence of pornography and obscene language can be highly offensive and fosters a "barrier of sexual differentiation." *Id.* at 1485-86.[10] The *Andrews* court considered that the following could create a hostile work environment under the totality of the circumstances: "name calling, pornography, displaying sexual objects on desks," and disappearance of files and work product and anonymous phone calls. *Id.* at 1486. A consideration of the sexual and non-sexual harassment must be made to determine if the hostile work environment was created.

Applying the above standards to the present case, it is clear that the Court cannot say that as a matter of law the

---

**10.** The Eleventh Circuit in *Steele* found that sexually related jokes and comments by a supervisor could create a hostile work environment although not *quid pro quo* harassment. 867 F.2d at 1315-16.

plaintiff's allegations, which have support in the record, are insufficient to demonstrate a hostile work environment. The Court will address all four remaining elements in order.

The defendant's employee is alleged to have made statements to the plaintiff regarding his status as a "male chauvinist pig" and also statements which could be construed as threats. The defendant's employee also allegedly made comments about the plaintiff's dress and that he would like to "get into her pants." These comments create the inference that the harassment and discrimination where intentional and based on the fact that the plaintiff was a woman.

The harassment was allegedly constant over the three month period during which plaintiff worked under Scatasti. There are even allegations that it began prior to this three month period. There was harassment of a sexual and non-sexual nature during this time including comments about the plaintiff's physical attributes and discussion about whether "she wore underwear." Considering all of the incidents of harassment including those not mentioned specifically here, the Court cannot say as a matter of law that the discrimination was not severe or pervasive. Incidents similar to these caused a district court to deny summary judgment in a hostile work environment case. *Campbell*, 770 F.Supp. at 1486. Although there was one incident of physical contact and others threatened in *Campbell*, the fact that the defendant's employee crowded the plaintiff in her office space and used obscenities in talking about her to others were relevant factors. *Id.* The allegations of the plaintiff are sufficient at this point to deny summary judgment.

The third factor requires that the harassment have some subjective effect on the plaintiff. The record establishes that the plaintiff felt uncomfortable at work and that she suffered further problems at home. The cause of these problems is attributed to the harassment by Scatasti. The fact that upon hearing a rumor that he might again supervise her caused her to complain to management is substantial evidence of the substantial subjective effect.

The fourth element is an objective one: would the actions of Scatasti have affected the reasonable woman? This element must be viewed from the perspective of the victim. The evidence demonstrates that Scatasti concentrated his harassment upon the plaintiff. Even when not directly harassing her, he would comment about her to other individuals in the office. His comments could raise an inference of a bias against women in general or specifically against the plaintiff. The plaintiff is not being hypersensitive in complaining about the conduct of Scatasti. A reasonable woman in the plaintiff's position could be severely affected by the conduct of Scatasti.

The Court cannot as a matter of law find that the plaintiff has failed to come forward with sufficient facts to survive summary judgment on a claim under Title VII. Using the decisions of *Andrews* and *Ellison* as guidance on what level of harassment creates a hostile work environment, the Court finds that the plaintiff has found sufficient facts in the depositions and affidavits to support her claim. Title VII was enacted to prevent an atmosphere of sexism from infecting the workplace. *Andrews*, 895 F.2d at 1486. The plaintiff at this stage has shown that not only was there a heavy atmosphere of sexism at her workplace, but also that it was so heavy as to seriously stifle her ability to work in violation of Title VII. Summary judgment is denied on all counts.