Mildred **PETERS**, et al.,
**Plaintiffs-Appellees,**

v.

**WAYNE STATE UNIVERSITY (79–1670), Teachers Insurance and Annuity Association and College Retirement Equities Fund (79–1658, 79–1671), Defendants-Appellants.**

**Nos. 79–1658, 79–1670 and 79–1671.**

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1981.

Decided Oct. 14, 1982.

---

William R. Glendon (argued), Rogers & Wells, New York City, William G. Christopher, Honigman, Miller, Schwartz & Cohen, Detroit, Mich., for defendants-appellants Teachers Ins. and Annuity Ass'n, et al.

Patricia Eames (argued), Elmer L. Roller, Sharon R. Stack, Kenneth A. McKanders, Wayne State University, Detroit, Mich., for defendant-appellant Wayne State University.

Diana A. Steele (argued), Margaret L. Moses, American Civil Liberties Union Foundation, New York City, Vesta Svenson, American Civil Liberties Union, Detroit, Mich., for plaintiffs-appellees Mildred Peters, et al.

William H. Ng (argued), Michael J. Connolly, Philip B. Sklover, Vella M. Fink, Equal Employment Opportunity Commission, Washington, D.C., for amicus curiae EEOC.

John D. Hatch, Law Dept., Hartford, Conn., for amicus curiae Aetna Life.

Before MARTIN, Circuit Judge, and PHILLIPS and BROWN,* Senior Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case requires us to decide whether Title VII prohibits an insurance company from operating or an employer from selecting a retirement benefits plan under which the size of monthly annuity payments is calculated from sex-segregated mortality tables. Wayne State University offers its faculty and certain other employees an annuity pension plan administered by Teacher Insurance and Annuity Association and the College Retirement Equities Fund. Under this plan, female annuitants receive smaller monthly payments than similarly situated male annuitants. This distinction is based on the actuarial probability that women will live longer than their male counterparts.

The plaintiffs, female employees of Wayne State, brought this sex discrimination action in the District Court for the Eastern District of Michigan. The District Court found that both Teachers Annuity and Wayne State had violated section 703(a) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(a). *Peters v. Wayne State University,* 476 F.Supp. 1343 (E.D.Mich.1979). We disagree and reverse.

Wayne State is a state-supported university located in Detroit, Michigan. Teachers Annuity is a pair of companies designed specifically to serve the unique retirement needs of academic employees. Teachers Insurance and Annuity Association is a legal reserve life insurance company; College Retirement Equities Fund is a companion corporation organized to provide a greater variety of insurance services. Teachers Annuity enables employees of academic institutions to move from one institution to another because the employees take their personal retirement contracts with them as they move. Five hundred fifty thousand employees at over three thousand institutions contract directly with Teachers Annuity for retirement annuity benefits.

Wayne State does not require its employees to participate in the Teachers Annuity retirement plan. Employees who choose to do so contribute to the fund five percent of their salaries matched by a ten percent Wayne State contribution. Each contribution automatically purchases retirement benefits which vest immediately and irrevocably in the individual employee. At retirement, employees must select among several annuity payment options.

If a woman selects a "single life option," which provides monthly payments for life, she will receive smaller payments than a man of the same age and accumulated contributions. Teachers Annuity computes the annuities from standard mortality tables which reflect the fact that, as groups, women live longer than men. At age sixty-five a woman's life expectancy is four years longer than a man's. To compensate for women's longevity, female annuitants receive smaller monthly payments. However, the present actuarial values of women's and men's benefits are identical.

The District Court found that both Teachers Annuity and Wayne State violated Title VII. Although women and men *as groups* received equal benefits, the District Court relied on *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), to find that the retirement plan discriminated against the *individual* female annuitant.

Section 703(a) provides in pertinent part:

(a) It shall be an unlawful employment practice for an *employer*—

(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of ... sex....

78 Stat. 255, 42 U.S.C. § 2000e–2(a)(1) (emphasis added). Federal courts have construed the statutory language to include, as employers, employers' agents and those to whom employers have delegated responsi-

* Circuit Judge Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982, and became a Senior Circuit Judge.

bility for employee compensation. As the Supreme Court noted in *Manhart*, "[A]n employer can[not] avoid his responsibilities by delegating discriminatory programs to corporate shells. Title VII applies to 'any agent' of a covered employer...." 435 U.S. at 718, n.33, 98 S.Ct. at 1380 n. 33.

In the present case, the District Court found that Teachers Annuity was an "employer" within the meaning of Title VII because "[t]he ties between WSU and TIAA/CREF are too great to allow them each to deny liability on account of the actions of the other." 476 F.Supp. at 1350. The court emphasized the fact that Teachers Annuity's "sole reason" for existence was to provide individually vested insurance contracts to employees of educational institutions.

■ The District Court's characterization of Teachers Annuity as an "employer" is clearly erroneous. Fed.R.Civ.P. 52(a). Obviously Teachers Annuity does not "employ" the plaintiffs in the conventional sense of the word. Neither does Wayne State retain Teachers Annuity as an agent or delegate to it any aspect of employee compensation. *See Los Angeles v. Manhart.* On the contrary, *Wayne State* determines the eligibility requirements for participation in the Teachers Annuity plans and sets the contribution levels for itself and its employees. Teachers Annuity's responsibility is limited to management of the retirement fund and disbursement of individual annuities. Furthermore, Wayne State exercises no control over Teachers Annuity, otherwise essential to a principal agent relationship. *NLRB v. Local No. 64, Falls Cities District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL–CIO,* 497 F.2d 1335, 1366 (6th Cir. 1974). *See generally* 2A C.J.S. Agency § 6; Restatement (Second) Agency § 14. Wayne State cannot control Teachers Annuity's administrative policies once its employees decide to join the Teachers Annuity plan. Indeed, the decision to use sex-segregated mortality tables to compute annuity payments was Teachers Annuity's alone. Wayne State has repeatedly and unsuccessfully attempted to persuade Teachers Annuity to alter its payment policy.

Teachers Annuity is not an "employer" for the purposes of Title VII; Wayne State has selected Teachers Annuity's retirement planning services for its employees. Teachers Annuity is an insurance company providing a service to Wayne State and Wayne State's employees. *Manhart* expressly held, "[Title VII] was not intended to revolutionize the insurance and pension industries." 435 U.S. at 717, 98 S.Ct. at 1380. We decline to hold that an insurance company may become liable under Title VII simply by furnishing its services to a Title VII employer.

■ An insurance company is not bound by Title VII because it furnishes its services to a Title VII employer. The reverse is not true. A Title VII employer cannot avoid its liabilities under the statute by claiming it has selected services which "happen" to discriminate against women. Wayne State emphasizes that Teachers Annuity's acts are lawful, that Teachers Annuity contracts directly with Wayne State employees, and that Wayne State's role is primarily administrative rather than policy-making. None of these facts relieves Wayne State of responsibility for *choosing* Teachers Annuity's retirement plan for its employees. Accordingly, Wayne State would be liable under Title VII if Teachers Annuity's plan discriminated against female annuitants. We hold, however, that the use of sex-segregated mortality tables to calculate retirement annuities does not violate Title VII if the actuarial value of the annuities is equal for similarly situated women and men.

"It is well established under Title VII that claims of employment discrimination ... may arise in two different ways." *Furnco Construction Co. v. Waters,* 438 U.S. 567, 581–582, 98 S.Ct. 2943, 2952, 57 L.Ed.2d 957 (1978) (Marshall concurring in part and dissenting in part). The plaintiff must show either "disparate treatment" or "disparate impact." "The central focus of the inquiry ... is always whether the employer is treating 'some people less favorably than others *because of* their ... sex.'" *Id.* at

577, 98 S.Ct. at 2949. (emphasis added) *citing International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977).

The District Court determined that Wayne State had violated Title VII without first finding either "disparate treatment" of women by Wayne State or a "disparate impact" on women of a Wayne State policy. Rather, the court relied *solely* on the holdings and dicta of *Manhart. Peters,* 476 F.Supp. at 1349. *See also Spirt v. TIAA-CREF,* 691 F.2d 1054 (2d Cir. 1982); *EEOC v. Colby College,* 589 F.2d 1139 (1st Cir. 1978). Careful analysis of Wayne State's actions reveals neither disparate treatment nor disparate impact. In short, there is no evidence that Wayne State treats women less favorably than men *because of* their sex.

■ Disparate treatment occurs when an employer bases employment decisions on an impermissible criterion, such as sex. An employer need not treat women and men in exactly the same manner. Title VII merely forbids the employer from acting with the intent to discriminate. *Furnco Construction Co. v. Waters,* 438 U.S. at 579–580, 98 S.Ct. at 2950–2951. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The Supreme Court has repeatedly discussed the proof requirements in disparate treatment cases. The plaintiff has the initial burden of showing that the employer's practices, "otherwise unexplained, are more likely than not" impermissibly motivated. *Id.* at 254, 101 S.Ct. at 1094, *citing Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949–2950. After the plaintiff has made out a prima facie case, the defendant has the opportunity to rebut the presumption of discrimination by showing a "legitimate non-discriminatory reason" for its decision. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Finally, the plaintiff has the opportunity to show that the defendant's "reason" is a pretext to mask a discriminatory decision. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. In all cases, the plaintiff retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

■ In the present case, Wayne State's retirement plan differentiates between women and men. Female annuitants receive smaller monthly payments than similarly situated male annuitants. Wayne State rebutted this prima facie showing of disparate treatment by articulating a legitimate non-discriminatory reason for treating female and male annuitants differently. Sex-segregated mortality tables are used to calculate payments according to accepted actuarial practices; the tables are sex-segregated simply because women live longer than men. Women receive smaller annuities over a longer period of time to ensure that the value of the retirement plan for women and men is equal.

Plaintiffs failed to carry their ultimate burden of persuasion under the *Burdine* analysis. They did not demonstrate at trial that Wayne State's motivation was discriminatory or improper in any way. Plaintiffs did not show that Wayne State's reliance on longevity to calculate benefits was a pretext to mask its intention to disadvantage and harm female annuitants. Wayne State has not violated Title VII according to a disparate treatment analysis.

■ Neither has Wayne State violated Title VII according to a disparate impact analysis. A disparate impact occurs when an employer's facially neutral policy burdens one class more than another. "[P]ractices that are fair in form, but discriminatory in operation" produce a "disparate impact." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). *See also Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). To defend against a claim of disparate impact, an employer must show that its practice is necessarily and closely related to a business pur-

pose. *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853.

Plaintiffs in this case claim that Wayne State's retirement plan has a disparate impact on women because women receive smaller monthly annuity payments than men. Plaintiffs focus on one fact, that the monthly checks received by women and men differ; they disregard all other aspects of the retirement plan. The District Court's focus and conclusion agreed with the plaintiffs': "[T]he use of separate mortality tables ... is discriminatory as applied to an individual women annuitant." 476 F.Supp. at 1349. Both the District Court and the plaintiffs rely solely on *Los Angeles v. Manhart* for the proposition that "employer pension plans must be nondiscriminatory on an individual basis, rather than on class basis." *Id.*

In *Manhart* the Supreme Court invalidated Los Angeles' retirement programs because the city required women to contribute more than men to receive equal retirement benefits. The difference in contribution rates stemmed from standard mortality tables reflecting the fact that women as a group live longer than men as a group. The city deducted the contributions directly from all employees' paychecks. The Court acknowledged the validity of the mortality tables but declared that Title VII protects *individuals,* not groups. The Court found the city liable for sex discrimination against each individual woman who received less take-home pay than a man for the same job.

■ Two significant factual differences exist between *Manhart* and the present case. In *Manhart* the employer deducted retirement contributions at different rates from employees' paychecks. Because women were required to contribute more than men, women effectively earned less money than men for the same jobs. Women and men employees at Wayne State contribute the same amount to the retirement plan. Consequently they receive equal compensation. Furthermore, in *Manhart* the employer operated the pension fund. The city collected the contributions, managed the accumulated money, and calculated the dis-

bursement rates. Wayne State does not operate the pension fund for its employees. Rather Teachers Annuity, an independent insurance company, manages the accumulated money in the individual accounts and calculates the disbursement rates.

These factual differences are significant because the Supreme Court expressly limited its *Manhart* holding along these lines: "All that is at issue today is a requirement that men and women make *unequal contributions* to an *employer-operated* pension fund." 435 U.S. at 717, 98 S.Ct. at 1380 (emphasis added). The Court's primary concern, that women received smaller paychecks for the same work, is not a factor in the present case.

Two landmark industrial benefits cases preceded *Manhart, General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), *reh. denied,* 429 U.S. 1079, 97 S.Ct. 825, 50 L.Ed.2d 800 (1977), and *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974). In both these cases the employer offered a disability benefits plan which excluded pregnancy as a disability. The Supreme Court found no sex discrimination under Title VII, in *Gilbert,* or under the Equal Protection Clause, in *Geduldig.* The plaintiffs failed to demonstrate either disparate treatment or a disparate impact from the exclusion of pregnancy as a disability.

Like *Gilbert* and *Geduldig,* the present case concerns a benefit plan, not employee wages. In all three cases, the employers paid or required equal contributions for both women and men. Justice Rehnquist's analysis in *Gilbert* quoting *Geduldig* controls the present case:

As in Geduldig, we start from the indisputable baseline that "[t]he fiscal and actuarial benefits of the program ... accrue to members of both sexes," 417 U.S., at 497 n. 20 [94 S.Ct. at 2492 n.20]

. . . . .

The "package" going to relevant identifiable groups we are presently concerned with—General Electric's male and female employees—covers exactly the same categories of risk, and is facially nondiscriminatory in the sense that "[t]here is no risk

from which men are protected and women are not. Likewise, there is no risk from which women are protected and men are not." Id., at 496–497 [94 S.Ct. at 2491–2492] . . .

As there is *no proof that the package is in fact worth more to men than to women, it is impossible to find any gender-based discriminatory effect in this scheme.*

429 U.S. at 138–139, 97 S.Ct. at 409 (citations and footnotes omitted) (emphasis added). For the same reasons we hold that Wayne State's retirement benefits package which offers female and male annuitants benefits of equal value does not violate Title VII. The retirement plan is not worth more to men than to women.

Common sense supports this holding. Plaintiffs point out that individual women may not live to the predicted statistical age of death and, therefore, may not recover the full actuarial value of their retirement packages. This argument is equally true for men. After death the total benefits received could be calculated to determine whether a man or a woman has received more money. But because annuity payments must be calculated prior to death, insurers and employers must use the only tools available to calculate payments, mortality tables. Both women and men may not live to the predicted statistical age but both women and men have the *same probability* of living to the predicted statistical age.

Gender neutral tables would not "equalize" the treatment of women and men. If annuities were calculated on gender neutral tables, women and men would receive equal payments. However, Wayne State would have to contribute more to a woman's retirement fund than to a man's. Consequently men would receive less immediate compensation. Furthermore, women living to the predicted statistical age for women would receive greater total benefits than men living to the predicted statistical age for men.

The retirement plan which Wayne State offers its employees differentiates between women and men on the basis of longevity solely. Wayne State's selection of a retirement plan which calculates annuities from sex-segregated mortality tables is not the "kind of 'artificial, arbitrary and unnecessary barrier to employment' which the Court found to be the intention of Congress to remove." *McDonnell Douglas,* 411 U.S. at 806, 93 S.Ct. at 1826, *quoting Griggs,* 401 U.S. at 431, 91 S.Ct. at 853. It is not a "built-in headwind" unrelated to an individual's longevity because longevity cannot be measured on an individual basis. We conclude that Wayne State has not violated Title VII by providing women and men equal retirement annuity benefits with different disbursement rates.

Because our decision on the issue of Title VII liability disposes of the case, we need not address the other issues raised by the parties.

The decision of the District Court is reversed.