**CARPARTS DISTRIBUTION CENTER, INC., et al.**

v.

**AUTOMOTIVE WHOLESALER'S ASSOCIATION OF NEW ENGLAND, et al.**

No. C–92–592–L.

United States District Court, D. New Hampshire.

July 19, 1993.

---

James P. Reidy, Sheehan, Phinney, Bass & Green, P.A., Manchester, NH, for plaintiffs.

James H. Schulte, Burns, Bryant, Hinchey, Cox & Schulte, PA, Dover, NH, for defendants.

### Order

LOUGHLIN, Senior District Judge.

Presently before the court is plaintiffs', Carparts Distribution Center, Inc. (Carparts), Daniel W. Drish and Shirley M. Senter, Co–Executors of the Estate of Randy J. Senter, Motion to Amend Complaint.

By order dated May 12, 1993, this court granted plaintiffs the opportunity to amend their complaint and on June 24, 1993, plaintiffs filed an amended complaint adding claims under the Americans With Disabilities Act of 1990, New Hampshire statutory law and common law. Defendants thereafter filed their objection to the amended complaint. However, as the plaintiffs were granted leave to amend, defendants' objection will be treated as a motion to dismiss pursuant to Fed.R.Čiv.P. 12(b)(6).

*Facts*

The facts of this case are set out in this court's order of January 4, 1993 (Doc. 7). Briefly, plaintiff Randy Senter was owner and sole shareholder of Carparts, an automotive parts wholesale distributor. Randy Senter was afflicted with Acquired Immune Deficiency Syndrome (AIDS) and as a result of AIDS-related illnesses he died on January 17, 1993. On February 9, 1993 Shirley M. Senter and Daniel W. Drish were appointed Co–Executors for Randy Senter's estate.

Defendant Automotive Wholesalers Association of New England, Inc. (AWANE) is the sponsor of a health benefit plan known as the Automotive Wholesalers Association of New England, Inc., Insurance Plan (AWANE PLAN), a self-funded uninsured medical reimbursement plan maintained for the benefit of AWANE members. At all times relevant hereto, Carparts was a member of AWANE and received group health coverage for its employees from AWANE.

Plaintiff Randy Senter was diagnosed HIV positive on May 12, 1986. Some time after this, AWANE and AWANE PLAN capped lifetime benefits for AIDS-related illnesses to $25,000.00 effective January 1, 1991. Otherwise, lifetime benefits were provided up to $1 Million per individual. Plaintiffs claim that this cap on AIDS-related illnesses was instituted with knowledge that Randy Senter was diagnosed HIV-positive and subject to AIDS-related expenses. Medical bills for Randy Senter total $119,753.02 of which only $25,000 has been paid by AWANE PLAN.

*Discussion*

The court will address each count of plaintiffs' amended complaint in turn.

Count I

Although count I of plaintiffs' proposed amended complaint is entitled "Title III of the Americans With Disabilities Act", (hereinafter "the Act"), the complaint raises claims involving other titles of the Act. Therefore, those portions of the Act relevant to the present discussion are the prohibition of discrimination based on disability in employment (title I) and discrimination by public accommodations (title III). Title V of the Act, entitled "Miscellaneous Provisions", deals with insurance and will also be discussed in this order. The court will address each title separately.

a) *Title I*

■ Title I of the Act, entitled "Employment" provides:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

42 U.S.C. § 12112(a). Covered entity is defined to include "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Carparts, as the former employer of Randy Senter, qualifies as a covered entity. Paragraph 24 of plaintiffs' amended complaint states that AWANE and AWANE PLAN are also covered entities under § 12111(2). This is incorrect. Neither AWANE nor AWANE PLAN qualify as a covered entity as that term is defined in the statute as neither was an employer of Randy J. Senter. Title I is therefore inapposite with respect to defendants.

Paragraph 33 of plaintiffs' amended complaint alleges that the Act

... required covered entities, such as the defendants, to avoid discriminatory employment practices relative to employees with actual or perceived disabilities. Discrimination under [the Act] includes the use of standards or methods of administration by a covered entity 'that has the effect of discrimination on the basis of disability' ... (quoting 42 U.S.C. § 12112(b)(3)(A)).

Doc. 10, p. 14, para 33. Since neither defendant qualifies as a covered entity, § 12112(d)(3)(A) is inapposite. Carparts, as a covered entity, however is prohibited from "participating in a contractual or other arrangement or relationship", 42 U.S.C. § 12112(b)(2), which subjects its employees such as Randy Senter to discrimination prohibited by title I. *Id.* For example, title I of the Act makes it unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to, among other things, fringe benefits available by virtue of employment, whether or not administered by the covered entity. *See* 29 C.F.R. § 1630.4(f); 42 U.S.C. § 12112(a). Health insurance such as that provided by defendants is considered a fringe benefit. Thus, liability under title I of the Act for the alleged discrimination against Randy Senter would lie, if at all, with Carparts, the covered entity, for subjecting Randy Senter to the alleged discriminatory practices of the defendants. Liability does not extend to the defendants under title I.

b) *Defendants' independent duty to Carparts*

■ Plaintiffs allege that Carparts, by participating in a "contractual or other arrangement" with defendants which allegedly discriminated against Randy Senter, caused Carparts to subject Randy Senter to discrimination and therefore AWANE breached a separate independent duty owed to Carparts

under the Act. *See* Doc. 10, para. 36. Although plaintiffs may have a valid claim based on some contract theory, plaintiffs cite no authority, nor can this court can find either case law or any wording in the Act itself that creates such a duty on the part of defendants under the Act.

#### c) *Title III—Public Accommodation*

■■■ What appears to be the brunt of count I of plaintiffs' amended complaint is the claim that defendants' alleged discriminatory practices with respect to Randy Senter represent violations of Title III of 42 U.S.C. § 12182, entitled "Prohibition of discrimination by public accommodations". · This section provides:

> (a) **General rule.** No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The term public accommodation is defined to include "professional office of a health care provider, hospital, or other service establishment". *See* 42 U.S.C. § 12181(7)(F). Defendants simply do not qualify as "places of public accommodation". The court interprets this definition of public accommodation as being limited to actual physical structures with definite physical boundaries which a person physically enters for the purpose of utilizing the facilities or obtaining services therein. Neither AWANE, nor AWANE PLAN possesses those characteristics. Neither of defendants is a health care provider to which Randy Senter went to in order to obtain health services. Randy Senter received medical treatment from various hospitals and physicians for his illness. Had Randy Senter been refused admittance or treatment by these hospitals or physicians based upon his illness then a violation of the Act would have occurred. There is no such claim in plaintiffs' amended complaint. While the argument could be made that the cap on coverage for AIDS-related medical expenses has the direct effect of preventing one afflicted with AIDS from obtaining medical treatment from health care providers, the Act, as written, provides no remedy for one in such a predicament.

#### d) *Title V*

Count I of plaintiffs' complaint raises a claim under title V of the Act which is entitled "Miscellaneous Provisions" and provides in relevant part:

> (c) **Insurance.** Titles I through IV of this Act shall not be construed to prohibit or restrict—...
>
> (2) a person or organization covered by this Act from establishing, sponsoring, observing, or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or
>
> (3) a person or organization covered by this Act from establishing, sponsoring, observing or administering the terms of a bona fide plan that is not subject to State laws that regulate insurance.
>
> Paragraphs ... (2), and (3) shall not be used as a subterfuge to evade the purpose of Titles I and III [42 U.S.C. §§ 12111 *et seq.*, 12181 *et seq.*]

42 U.S.C. § 12201(C)(2)–(3). The legislative history of § 12201(c) is informative:

> ... [T]he decision to include this section may not be used to evade the protections of title I pertaining to employment, title II pertaining to public services, and title III pertaining to public accommodations beyond the terms of points (1), (2) and (3), regardless of the date an insurance plan or employer benefit plan was adopted.
>
> For example, an employer could not deny a qualified applicant a job because the employer's current insurance plan does not cover the person's disability or because of the increased costs of the insurance.
>
> Moreover, while a plan which limits certain kinds of coverage based on classification of risk would be allowed under this section, the plan may not refuse to insure or refuse to continue to insure, or limit the amount, extent, or kind of coverage available to an individual, or charge a different

rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation, or rate differential is based on sound actuarial principles or is related to actual or reasonably anticipated experience....

In sum, section 501(c) [42 U.S.C. § 12201(c)] is intended to afford to insurers and employers the same opportunities they would enjoy in the absence of this legislation to design and administer insurance products and benefit plans in a manner that is consistent with basic principles of insurance risk classification. This legislation assures that decisions concerning the insurance of persons with disabilities which are not based on bona fide risk classification be made in conformity with non-discrimination requirements. Without such a clarification, this legislation could arguably find violative of its provisions any action taken by an insurer or employer which treats disabled persons differently under an insurance or benefit plan because they represent an increased hazard of death or illness.

The provisions recognize that benefit plans (whether insured or not) need to be able to continue business practices in the way they underwrite, classify, and administer risks, so long as they carry out those functions in accordance with accepted principles of insurance risk classification.

Americans with Disabilities Act of 1990, P.L. 101–336, 104 Stat. 327, 419–421 (1990).

The amended complaint alleges that to the best of plaintiffs' knowledge the limitation on Randy Senter's insurance coverage was not based on actuarial risk classification and that even if actuarial risk classification exists to justify coverage limitations, defendants set coverage limitations based on an intentional subterfuge to avoid the purpose of the Act because defendants continue to provide full coverage for other illnesses which pose greater risk to the financial stability of AWANE and AWANE plan in violation of 42 U.S.C. § 12201(c)(2), (3). *See* Doc. 10 at para. 35.

■ Subsections (2) and (3) of § 12201(c) apply only to "a person or organization covered by this act". 42 U.S.C. § 12201(C)(2);

(3). The court has determined that for all purposes relevant to the present action defendants do not qualify as either employers or places of public accommodation under the Act so as to be "covered by" the Act. This court interprets § 12201(c) as prohibiting an employer or place of public accommodation from circumventing the Act and thereby discriminating against an employee or against one seeking accommodation based on the fact that the employer or place of public accommodation established, sponsored, observed or administered a plan that does not cover the person's disability or because of the increased costs of the insurance. The court believes that such an interpretation of § 12202(c) is in harmony with the overall purpose of the Act in that employers and public accommodations are prohibited from participating in any manner with an insurance plan that discriminates against disabled persons which discrimination is not otherwise based in good faith on some form of underwriting, classifying or administering risks. For the foregoing reasons Count I of plaintiffs' amended complaint is dismissed.

Count II

■ Count II of plaintiffs' amended complaint is a claim brought under the Civil Rights Act, 42 U.S.C. § 1985(3). Plaintiffs contend that defendants conspired to discriminate against Randy Senter through the institution of a lifetime cap on AIDS-related medical benefits. Doc. 10, para 47. "[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (cited in *Local 48 v. United Brotherhood of Carpenters & Joiners of America*, 920 F.2d 1047, 1058 (1st Cir.1990)). Plaintiffs must identify a source of congressional power to reach the private conspiracy alleged by plaintiffs. *Griffin* 403 U.S. at 104, 91 S.Ct. at 1799; *Local 48* at 1058.

Plaintiffs claim that Randy Senter, being afflicted with AIDS, a recognized disability under the Americans with Disabilities Act of 1990, "was a member of a discrete and insular minority deserving of protected class sta-

tus under 42 U.S.C. § 1985(3)". Doc. 10, para. 45. However, the Americans With Disabilities Act for all purposes relevant herein prohibits discrimination in employment and in places of public accommodation. This court has ruled that defendants do not fall within either of these classifications and the Act is therefore inapposite to them. Because plaintiffs have failed to identify a source of congressional power to reach the private conspiracy alleged by plaintiffs, count II of plaintiffs' amended complaint is dismissed.

### Count III

Count III of plaintiffs' amended complaint alleges a violation of N.H.REV.STAT.ANN. § 354–A, referred to as the "Law Against Discrimination". Plaintiffs allege that defendant AWANE PLAN as a place of public accommodation and both defendants as "persons" within the meaning of RSA § 354–A:2 discriminated against Randy Senter by imposing a cap on AIDS-related health benefits. Defendants contend, however, that RSA 354–A is preempted by ERISA. The court will discuss the preemption issue first as a finding that RSA 354–A is preempted will be dispositive.

Although defendants contend that this court has already determined that RSA 354–A is preempted by ERISA, the court never reached that issue in its order of January 4, 1992 (Doc. 7), ruling instead that RSA 354–A was inapposite as neither of defendants qualified as an employer under the statute. *See* Doc. 10 at pp. 3–4. Plaintiffs' complaint, as amended, however, states claims that may be cognizable under RSA 354–A. In analyzing the issue of preemption, the court will refer to the parties' briefs with respect to plaintiffs' motion to remand to state court which address the issue of preemption.

■ Section 514 of ERISA, 29 U.S.C. § 1144 *provides that its provisions* "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in ... section 1003(a) and not exempt under section 1003(b)." 29 U.S.C. § 1144(a). The plan in issue is covered by 29 U.S.C. § 1003(a) and is not exempt under § 1003(b) and therefore ERISA would supersede any state law with respect to the plan. State law is defined as

"all laws, decisions, rules, regulations, or other State action having the effect of law, of any State ...". 29 U.S.C. § 1144(c).

Plaintiffs contend that RSA 354–A is saved from preemption by 29 U.S.C. § 1144(d) which saves from preemption "any law of the United States ..." Plaintiffs argue that although RSA § 354–A is not a law of the United States, *it serves as an enforcement vehicle for an analogous federal law,* the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*), and for that reason should not be preempted as it would disrupt the enforcement scheme contemplated by the Act. This argument fails however, as the court has ruled *supra* that the Act is inapposite as to defendants and thus no disruption in the enforcement of the Act would result by holding that RSA 354–A is preempted. The court finds therefore that RSA 354–A is preempted by ERISA with respect to the plaintiffs' cause of action. Therefore, count III is dismissed.

### Counts IV and V

■ Count IV of plaintiffs' amended complaint is a breach of contract claim and alleges that defendants, by their failure or refusal to process all non-AIDS related medical expenses or reimbursement claims submitted by Randy Senter and Carparts on behalf of Randy Senter constituted a breach under the agreement with Carparts. *See* Doc. 10, para. 68. Plaintiffs further allege that the "freeze" on the processing of medical and reimbursement claims by Carparts employees without advance notice to Carparts also constituted a breach of contract. *Id.* para. 69. Defendants contend that this count is preempted by ERISA.

As stated above, ERISA provides for preemption of any state law that relates to any employee benefit plan. *See* 29 U.S.C. § 1144(a). However, ERISA also contains a savings clause under which all state laws which regulate insurance are exempt from preemption. *See* 29 U.S.C. § 1144(b)(2)(A); *See also Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). "[I]n order to regulate insurance, a law must not just have an impact on the insurance industry, but must be

specifically directed toward that industry." *Pilot Life Insurance Co.* at 50, 107 S.Ct. at 1554. Plaintiffs cite no specific law in their breach of contract claim but simply rely on general principles of contract law which are not limited in their application to the insurance industry. Count IV is preempted by ERISA and must be dismissed.

■ Lastly, count V alleges that defendants breached an implied covenant of good faith in the execution of their obligations under the parties' agreement. This count is also preempted by ERISA based upon the same reasoning used in disposing of count IV and is likewise dismissed.

*Conclusion*

Count I of plaintiffs' amended complaint is dismissed as the court finds the Americans With Disabilities Act of 1990 inapposite with respect to the claims against defendants. Count II is dismissed as plaintiffs have failed to identify a source of congressional power other than the Americans With Disabilities Act so as to reach the private conspiracy alleged by plaintiffs. The remaining counts III, IV and V are dismissed as they are preempted by ERISA. For the foregoing reasons defendants' motion to dismiss plaintiffs' amended complaint is granted.