Hilda M. PAPPAS, Plaintiff,

v.

**BETHESDA HOSPITAL ASSOCIATION
and Benefit Services Agency, Inc.,
Defendants.**

No. C2–93–1116.

United States District Court,
S.D. Ohio,
Eastern Division.

June 29, 1994.

Denis James Murphy, Carlile, Patchen, Murphy & Allison, Columbus, OH, for plaintiff Hilda M. Pappas.

Peter Nelson Cultice, Kincaid Cultice & Geyer, Zanesville, OH, for defendants Bethesda Hosp. Ass'n, Benefit Services Agency Inc., Bethesda Hosp. Employee Benefit Plan.

## *OPINION AND ORDER*

GEORGE C. SMITH, District Judge.

Plaintiff alleges that defendants Benefit Services Agency, Inc. (BSAI) and Bethesda Hospital Association (Bethesda) engaged in discriminatory behavior in violation of Title I and Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12111–12117, 12181–12189. In addition, plaintiff alleges that the defendants deprived her of equal protection of the laws and of equal privileges or immunities in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3).

This matter is before the Court on defendants' joint motion to dismiss. (Doc. 3) Defendant BSAI moves to dismiss all counts against it for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Proce-

dure.[1] Defendant Bethesda moves to dismiss Counts II and III of plaintiff's complaint for failure to state a claim upon which relief can be granted.

## I.

For purposes of ruling on defendants' motion, the Court assumes that the following facts are true. Plaintiff worked at Bethesda Hospital as a registered nurse. In August 1991, she applied, pursuant to a plan offered by Bethesda, for family health insurance coverage for herself, her husband and two children. Benefit Services administered the health insurance plan that Bethesda offered to its employees. Although defendants approved plaintiff for individual coverage, they denied her application for family coverage.

Plaintiff alleges defendants informed her that family coverage was denied because her husband was receiving medication for hypertension and hyperlipidemia, and that her son was a paraplegic confined to a wheelchair. Plaintiff asserts that, after defendants told her that family coverage was denied, she made continuing efforts to get defendants to reconsider their decision. Bethesda admits that plaintiff requested reconsideration of the denial of family coverage. Bethesda, however, maintains that Pappas never reapplied for coverage.

Plaintiff brought a charge of discrimination before the Equal Employment Opportunity Commission (EEOC). On September 21, 1993, the EEOC sent plaintiff a Notice of Right to Sue.

Plaintiff alleges in Count I that both defendants are "covered entities" as defined by 42 U.S.C. § 12111(2). She asserts that the conditions of her husband and son constitute disabilities as defined in § 3 of the ADA, 42 U.S.C. § 12102(2). Plaintiff contends that, by denying her family coverage and refusing to reconsider this decision, defendants acted with malice and reckless indifference with respect to plaintiff's federally protected rights in violation of Title I of the ADA. 42 U.S.C. §§ 12111–12117.

---

1. Defendants submitted an affidavit with their joint motion to dismiss. The Court, however, declines to treat defendants' motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

Count II of the complaint alleges that both defendants are public accommodations as defined by the ADA, 42 U.S.C. § 12181(7)(F). Therefore, defendants' actions violated Title III of the ADA. 42 U.S.C. §§ 12181–12189. Plaintiff asserts in Count III that the defendants' actions constituted a conspiracy to deprive the plaintiff of equal protection of the laws or of equal privileges or immunities in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3).

## II.

■ A district court may not dismiss a claim under Rule 12(b)(6) for the failure to state a claim unless it is apparent beyond a doubt to the court that the plaintiff can prove no set of facts to support a claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In determining whether the facts presented in a complaint support a claim upon which relief may be granted, the district court is to liberally construe the facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 344 (1990). The essence of a court's inquiry is to determine whether the allegations contained in the complaint satisfy the mandate of the Federal Rules that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

## III.

■ While the court is to liberally construe facts in pleadings in a light most favorable to the plaintiff, the same is not true as to conclusions of law that are included in the pleadings. *Blackburn v. Fisk Univ.*, 443 F.2d 121 (6th Cir.1971). Plaintiff's complaint contains the allegation that both defendants are covered entities as defined by the ADA.

This statement is a conclusion of law. It is therefore necessary to determine whether the facts in the complaint, liberally construed, state or imply that defendants were both covered entities.

## A.

■ Defendant BSAI moves to dismiss Count I of the plaintiff's claim on the ground that it was not a covered entity to which the antidiscrimination prohibitions of Title I of the ADA apply. Section 101(2) of the ADA states that "covered entity means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). BSAI finds support in *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England*, 826 F.Supp. 583 (D.N.H.1993). In *Carparts*, the court granted the defendant health insurance plan administrator's motion to dismiss for failure to state a claim. The court found that because the plan administrator did not employ the plaintiff, it was not a covered entity under the ADA. 826 F.Supp. at 585. BSAI argues that it, likewise, does not employ Pappas and therefore is not a covered entity to which Title I is applicable.

The plaintiff responds that "employer," as used in the ADA's definition of "covered entity," should be interpreted in the same way that the term is used in cases brought under Title VII of the Civil Rights Act of 1964. Noting that the definition of "employer" in both the ADA and Title VII includes agents of traditional employers,[2] plaintiff argues that BSAI is Bethesda's agent for its employees' health insurance and therefore is a covered entity under the ADA.

Plaintiff relies upon *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054 (2d Cir. 1982), *vacated and remanded sub nom, Long Island Univ. v. Spirt*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983), *reinstated on remand subject to modification on other grounds*, 735 F.2d 23 (2d Cir.1983), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83

---

2. The operative language in the definitions of "employer" under the ADA and Title VII is identical: "The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and *any agent of such person....*" *Cf.* 42 U.S.C. § 12111(5)(A) and 42 U.S.C. § 2000e(b) (emphasis added).

L.Ed.2d 185 (1984). In *Spirt,* the court held that an independent insurance and pension fund that administered benefits for the plaintiff's employer was the plaintiff's employer for purposes of Title VII.

Defendants properly point out, however, that the Sixth Circuit took a narrower view of what constitutes an agent of an employer. *Peters v. Wayne State Univ.,* 691 F.2d 235 (6th Cir.1982), *cert. granted, judgment vacated and case remanded on different grounds,* 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983). In *Peters,* the court concluded that an independent administrator of pension and retirement benefits for university employees was not a Title VII employer of the plaintiffs, who were employed by universities which subscribed to the plans. The court stated "[w]e decline to hold that an insurance company may become liable under Title VII simply by furnishing its services to a Title VII employer." 691 F.2d at 238.

In *Peters,* the court first pointed out that the defendants did not employ the plaintiffs in the conventional sense of the term. *Id.* Second, the court noted that the employer did not delegate any of its duties regarding employee compensation to the defendant. *Id.* Third, the court emphasized that the insurer was not the employer's agent since the employer did not exercise the type of control that is required in a principal-agent relationship. *Id.*

In the case before the Court, plaintiff does not allege that BSAI was her employer in the conventional sense of the term. Additionally, plaintiff does not allege, nor can it be inferred from the complaint, that Bethesda delegated any of its duties regarding employee benefits to BSAI. In fact, the complaint refers to the health insurance plan as the "Defendant's [Bethesda]," while BSAI is referred to as the "administrator." Finally, there is nothing in the complaint to indicate that Bethesda exercised any degree of control over BSAI that would be necessary to make BSAI an agent of Bethesda.

The Court finds persuasive the parties' arguments that the Title VII interpretation of "employer" should be applied to the Americans with Disabilities Act. In this Circuit, as *Peters* demonstrates, the administrator of a Title VII employer's benefits is not deemed to be an agent of the Title VII employer solely because it administers employee benefits for that employer. Therefore, such an administrator is not subject to the antidiscrimination provisions of Title VII. Applying *Peters* to the instant case, the Court concludes that the administrator of employee benefits for a statutory employer under the ADA is not an agent of that employer and therefore may not be held liable for benefits that discriminate based on disability.

In conclusion, plaintiff has failed to plead facts under which it can be inferred that defendant BSAI is a covered entity under the ADA. For this reason, BSAI's motion to dismiss Count I of the complaint will be granted.

**B.**

Title III of the ADA provides in part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." ADA § 302(a), 42 U.S.C. § 12182(a). Plaintiff alleges in her complaint that both Bethesda and BSAI are public accommodations as defined by Title III of the ADA. Plaintiff claims that both defendants' denial of family health insurance benefits constituted unlawful discrimination in violation of Title III.

The Court must decide whether either or both of the defendants is a public accommodation within the meaning of the Act. In their motion to dismiss, the defendants argue that neither is a public accommodation in regard to their provision of health insurance benefits and services. Defendants again rely on *Carparts, supra,* in which the court held that Title III applied to "actual physical structures with definite physical boundaries which a person physically enters for the purpose of utilizing the facilities or obtaining services there." 826 F.Supp. at 586.

BSAI argues that, because plaintiff did not enter its physical structure, it is not a public

accommodation within the purview of Title III. Bethesda admits that it falls within the general definition of public accommodations. However, Bethesda contends that it falls outside the definition in regard to its provision of health insurance benefits because plaintiff did not claim that Bethesda denied her access to its facility or services provided therein.

Plaintiff argues that Congress intended that Title III of the ADA apply to the sale of insurance contracts. First, plaintiff notes that both hospitals and insurance offices are places of public accommodation within the statute. 42 U.S.C. § 12181(7)(F). Second, plaintiff relies on U.S. Department of Justice pronouncements that discriminatory practices in the sale of insurance contracts fall within the prohibition of Title III. 28 C.F.R. Pt. 36, App. B. at 600 (1993).

■ Since neither the U.S. Supreme Court nor the Sixth Circuit has interpreted the scope of Title III, this Court must decide the issue based on the "ordinary, common meaning" of the words in the statute. *United States v. Ransbottom*, 914 F.2d 743, 745 (6th Cir.1990), *cert. denied*, 498 U.S. 971, 111 S.Ct. 439, 112 L.Ed.2d 422 (1990). Title III's general antidiscrimination provision refers to discrimination on the basis of disability by "any *place* of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). The statute provides examples of public accommodations, all of which are "places" within the plain meaning of that word (hotel, restaurant, theater, grocery store, or senior citizen center, 42 U.S.C. § 12181(7) (1993)). Furthermore, the references throughout Title III make it clear that its scope is limited to discrimination in the provisions of goods, services, facilities, privileges, advantages or accommodations based on a disabled person's physical ability to make use of those goods, services, etc.[3]

Again, plaintiff properly points out that both hospitals and insurance offices are places of public accommodation and thus Title III can apply to them. An example of this is a Title III claim alleging that an insurance office did not make reasonable accommodations for a person whose access to it required the use of a wheelchair. Here, however, plaintiff's claim has nothing to do with an inability to make physical use of the services of a place of public accommodation. In other words, there is no nexus whatsoever between the alleged discrimination and any public accommodation.

Finally, plaintiff points out that the U.S. Department of Justice has construed Title III as applicable to the sale of insurance contracts. This Court, however, need not defer to the Department's construction. The Supreme Court recently stated that "[i]n ... contexts in which we defer to an administrative interpretation of a statute, we do so only if Congress has not expressed its intent with respect to the question and then only if the administrative interpretation is reasonable." *Presley v. Etowah County Commission*, 502 U.S. 491, 112 S.Ct. 820, 117 L.Ed.2d 51 (1992). Here, Congress has unambiguously expressed its intent with respect to the applicability of Title III as it relates to the physical use of a place of public accommodation. The Court, therefore, declines to defer to the Department's construction.

For the above reasons, the Court finds that in Count II plaintiff has not stated a claim against either defendant upon which relief can be granted. Defendants' motion to dismiss Count II will therefore be granted.

### C.

■ Defendants also move to dismiss Count III for the failure to state a claim upon which relief can be granted. In this count, plaintiff alleges that Bethesda and BSAI conspired to deprive her of the equal protection of the laws and equal privileges

---

**3.** "Goods, services, facilities ... shall be afforded to an individual with a disability in the most integrated *setting* appropriate to the needs of the individual," 42 U.S.C. § 12182(B); "discrimination includes ... (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded [or] denied services ... because of the *absence of auxiliary aids and services* ... [or] (iv) a failure to remove architectural barriers, and communication barriers that are structural in nature...." 42 U.S.C. § 12182 (emphasis added).

and immunities of the United States in violation of 42 U.S.C. § 1985(3).

Section 1985(3) reads, in pertinent part: If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right of or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Defendants cite *Carparts* for the proposition that a cause of action under 42 U.S.C. § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 826 F.Supp. at 587 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). Defendants argue that plaintiff has failed to demonstrate that she belongs to a "discrete and insular minority" to which 42 U.S.C. § 1985(3) applies. *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir.1980).

The disposition of this case, however, does not require a determination of whether plaintiff is a member of a discrete and insular minority protected by § 1985(3). Rather, it merely requires that the Court answer the threshold question whether a person who alleges that she was injured by a conspiracy to violate Title I of the ADA may bring an action under § 1985(3).[4] The Court finds that she may not.

Fifteen years ago, the Supreme Court of the United States addressed a similar question in the context of the relationship between § 1985(3) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e–17. In *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Court decided "whether a person injured by a conspiracy to violate § 704(a) of the Civil Rights Act of 1964 is deprived of 'the equal protection of the laws, or the equal privileges and immunities under the laws' within the meaning of § 1985(3)." *Id.* at 372, 99 S.Ct. at 2349.

In *Novotny*, the respondent was a loan officer and member of the board of directors of the petitioner savings and loan who was terminated from his employment. Respondent was terminated after he voiced support for female employees at a board of directors meeting. He believed female employees were being denied equal employment opportunities within the company. Respondent filed a Title VII charge with the EEOC. After respondent received a "right to sue letter" from the EEOC, he filed suit against the petitioner in federal court, alleging violations of 42 U.S.C. § 1985(3) and Title VII.[5]

In its analysis, the Court noted the "detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims" under Title VII. *Id.* at 372–73, 99 S.Ct. at 2349. These processes include the requirement that a Title VII plaintiff bring his dispute to a state or local fair employment commission, if one exists, before filing a charge with the EEOC. Title VII's remedy provisions also include specific time limits which have to be adhered to before bringing

**4.** The discussion is narrowed to allegations of a violation of Title I of the ADA for several reasons. The plaintiff's allegation of a conspiracy in Count III is based solely on the same facts that relate to the allegations of ADA violations in Count I and Count II. Earlier in this opinion, the Court held that Title III of the ADA is not applicable to either defendant; thus Count II of the complaint is dismissed and Title III shall not be considered. Plaintiff does not allege that either defendant violated Title II of the ADA, which relates to public services, so Title II shall not be considered. The only ADA count for which the defendants did not move for dismissal is the Title I count against Bethesda. This is the only ADA count that the Court has not dismissed.

**5.** Both in *Novotny* and in the instant case, a standing issue is raised under § 1985(3). The resolution of the standing question, however, is not necessary for the disposition of the motion to dismiss.

a private cause of action. *Id.* at 373, 99 S.Ct. at 2349.

Because of Title VII's detailed remedial scheme, the Court held that "[Section] 1985(3) could not be invoked to address violations of Title VII." *Id.* at 378, 99 S.Ct. at 2352. The Court reasoned that, if such a § 1985(3) claim were allowed, "a complainant could avoid most, if not all, of these detailed and specific provisions of the laws." *Id.* at 375–76, 99 S.Ct. at 2350–51.

The remedies that Congress provided for violations of Title I of the ADA incorporate by reference the remedies that Congress created for Title VII violations. 42 U.S.C. § 12117 (incorporating 42 U.S.C. §§ 2000e–4, 2000e–5, 2000e–6, 2000e–8 and 2000e–9 as the exclusive remedies for violations of Title I). These remedies include the "detailed administrative and judicial process[es]" that the Court referred to in *Novotny*. 442 U.S. at 372, 99 S.Ct. at 2349. *See Kent v. Director, Missouri Dept. of Elementary and Secondary Education and Div. of Vocational Rehabilitation,* 792 F.Supp. 59 (E.D.Mo.1992) (a right to sue letter from the EEOC is a statutory prerequisite to a claim under Title I of the ADA).

To allow a plaintiff to bring a § 1985(3) claim alleging a conspiracy based on the same facts as the plaintiff's Title I claim would undermine the remedies Congress provided within the ADA. The Sixth Circuit followed this view in *Griggs v. Nat'l Railway Passenger Corp.,* 900 F.2d 74 (6th Cir.1990), in which the court held that a railway worker could not bring an action under the Federal Employers' Liability Act based on allegations that were cognizable under Title VII. In *Griggs,* the court stated that "we should be reluctant ... to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute." *Id.* at 76.

In the instant case, the Court declines to broadly interpret the Civil Rights Act of 1871 because doing so would permit plaintiff to bypass the detailed remedial procedures that Congress provided in the ADA. For the foregoing reasons, Count III of plaintiff's complaint will be dismissed for failure to state a claim upon which relief can be granted.

## IV.

Based upon the foregoing, the Court holds that defendants' motion to dismiss Counts I, II, and III are **GRANTED.** Count I is **DISMISSED** with respect to BSAI. Counts II and III are **DISMISSED** with respect to both defendants.

**IT IS SO ORDERED.**