Larry D. BARGER, Plaintiff,

v.

CSX TRANSPORTATION, INC., Defendant.

No. C–1–98–234.

United States District Court, S.D. Ohio, Western Division.

March 1, 2000.

---

Gregory Thomas Hughes, Burge & Wettermark, Ludlow, KY, for Larry D Barger, plaintiff.

James Lacey O'Connell, Lindhorst & Dreidame Co, Cincinnati, OH, for CSX Transportation Inc, defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (doc. 8); Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (doc. 12); and Defendant's Reply (doc. 14).

## BACKGROUND

Plaintiff Larry D. Barger brings this action pursuant to the Federal Employers Liability Act ("FELA"), Title 45 U.S.C. § 51, against his employer, Defendant CSX Transportation, Inc. Plaintiff's cause of action arises from two separate incidents, the facts of which are presented in the following sections.

### A. The March 27, 1995 Incident

The first incident involves an injury sustained during Plaintiff's removal of a pair of work boots on March 27, 1995 (*see* docs. 1 & 12). The following facts, except where noted, are not disputed by the Parties. During a Safety and Rules Training Program held prior to the incident, Defendant CSX Transportation, Inc. provided its employees with certificates to be used to buy work boots at the company's expense. In these certificates, Defendant recommended several brands of work boots as well as stores at which the boots could be purchased. The company did not require that a certain brand or specific style be purchased (doc. 8; Woody Aff.; *see also* Barger Dep. at 21–22, 33–36).

Plaintiff used his certificate to purchase the work boots involved in the injury at one of the stores named during the training program (doc. 12; Barger Dep. at 30–33). Red Wing Shoe Company, Inc. manufactured the boots. Plaintiff asserts that he originally had wanted to purchase boots with a zipper fastener, but the store at which he shopped did not have such boots in stock (doc. 12; Barger Dep. at 30). So, Plaintiff states that he decided to purchase boots featuring speed-lace hooks on the top portions of the boots. This work-boot design allegedly allowed the wearer to put on and take off the boots quickly (doc. 12). Plaintiff avers that he purchased the work boots at issue in this case because they were lighter and more comfortable than his previous pair (Barger Dep. at 37–38). Plaintiff also attests that he had previously owned a pair of work boots with speed-lace hooks (*Id.* at 36–37).

Plaintiff's negligence claim related to the boots with speed-lace hooks focuses on the injury he allegedly sustained during removal of the boots on March 27, 1995. Plaintiff alleges that while he was seated on a bed in a hotel room paid for by Defendant, one of the speed-lace hooks caught on the inside of Plaintiff's pants as he tried to remove the boots (*Id.* at 46–49). According to Plaintiff, he tore the tendon in his left ring finger as a result and missed fifty-four days of work (Barger Dep. at 62).

Plaintiff contends that he had experienced previous problems with other boots featuring speed-lace hooks prior to the March 27, 1995 incident (*Id.* at 37). In

addition, Plaintiff alleges that other CSX employees, including Sam Spears and Randy Oplinger, had experienced problems with speed-lace hooks, and he asserts that these problems had been discussed with one of Plaintiff's supervisors (*see* doc. 12; Barger Dep. at 53–55). Although Plaintiff fails to attach any affidavits of other CSX employees, Plaintiff argues that their testimony would show that it was common knowledge at Defendant CSX Transportation, Inc. that the speed-lace hooks tended to catch on things and were generally unsafe (*see* doc. 12).

In contrast, Defendant asserts that neither the employer nor the shoe manufacturer had "notice or knowledge of any possible risk or hazard as a result of the hook feature of this style of footwear" (doc. 8). Defendant proffers the affidavit of Gail B. Sater, an employee of Red Wing Shoe Company, Inc., in support of its position. In the affidavit, Ms. Sater avers that she reviewed company records and statistics as well as customer suggestions and complaints, and she states that "in such records, there is no report or account of any injury alleged to have been caused, or contributed to, by the presence of such hooks" (doc. 8; Sater Aff.). The affidavit of James R. Woody, who at the time of Plaintiff's injury conducted Safety and Rules Training Programs for Defendant, also states that he was unaware of any potential hazard from the speed-lace hooks (*Id.*, Woody Aff.). Furthermore, Defendant notes that Plaintiff acknowledges in his deposition that he had removed the boots in the same manner "off and on" over a period of two years without injury (Barger Dep. at 24–25, 31–32).

### B. The December 5, 1996 Incident

The second incident occurred at what is known as the ¾ switch at the north end of the New River Yard near New Miami, Ohio, an area with which Plaintiff was familiar in 1996 (*see* Barger Dep. at 67–69 & Ex. B). As a conductor, Plaintiff's duty on December 5, 1996 was to advance his train to a point north of Jackson Road on the No. 2 Main and then to back the train onto either the No. 3 Track or the No. 4 Track (*Id.* at 72–76). In order to do this, Plaintiff needed to throw the ¾ switch, a switch that is linked to Tracks Nos. 3 and 4 in the north end of New River Yard. This switch is a "ball-type" switch that requires the operator to throw the switch lever in an 180–degree arc in order to move the switch points (doc. 12; Barger Dep. at 84; *see also* doc. 8 & Thompson–Williams Aff.).

On December 5, 1996, Plaintiff alleges that he threw the lever on the ¾ switch with his hands as far as it would go (*Id.* at 91–93). Plaintiff contends that it then became necessary for him to use his foot to get the lever to complete its arc (*Id.*). During this operation, Plaintiff asserts that the switch lever suddenly went down and caused him to lose his balance and fall. The fall allegedly led to a knee injury (*Id.* at 94–98) In his deposition, Plaintiff states that the weather and ground conditions in the yard that day did not contribute to the accident (*Id.* at 88). Plaintiff also states that the switches in the northern section of the yard, where the incident occurred, are thrown about once a day while the switches in the southern section are thrown hundreds of times a day (*Id.* at 82).

Plaintiff alleges that the method of stepping on switch levers is an accepted CSX practice (*see* Barger Dep. at 86–87 & Ex. C). Plaintiff avers that he had used his foot to get a switch lever to turn the full 180 degrees on other occasions (*Id.*). In addition, Plaintiff acknowledges that some switches are stiffer than others, and he states that it is not unusual for a switch lever to be stiff during the last couple of inches of downward motion (Barger Dep. at 93). However, Plaintiff contends that, in his experience, switch levers that need to be stepped on generally complete their arcs gradually rather than suddenly. Thus, Plaintiff asserts, the ¾ switch was defective and Defendant was negligent in not discovering the defect.

In contrast, Defendant insists that Plaintiff himself acknowledges he cannot demonstrate that the railroad company knew or should have known about the defect in the ¾ switch (*see* doc. 8 & Barger Dep. at 117–19). Specifically, Defendant directs the Court's attention to Plaintiff's deposition testimony in which Plaintiff states that he does not know how long the ¾ switch had been in a defective condition and he does not know whether anyone at the railroad company knew of the defect (*Id.*). Defendant also avers that, after Plaintiff reported the incident, Michael Swigart, CSX Track Inspector, and T.L. Reynolds, CSX Trainmaster, inspected the switch (doc. 8, Swigart & Reynolds Affs.). The two men allegedly found that the stiffness of the switch was caused by a low tie, a condition that cannot be detected by visual inspection, and they allegedly found that the switch must be operated in order to detect this condition. In their affidavits, Mr. Swigart and Mr. Reynolds both attest that no one had reported any prior problems with the ¾ switch and they assert that they were not able to determine how long the low tie condition had existed (*Id.*).

On March 27, 1998, Plaintiff filed this action against Defendant, contending that Defendant failed to provide a safe work environment and proper equipment for its employees as required under the FELA (doc. 1). In his Complaint, Plaintiff alleges that his injuries were directly and proximately caused by the negligence of Defendant in violation of the FELA requirement that employers must provide employees with a reasonably safe place to work (docs. 1 & 13).

Defendant filed a motion for summary judgment on June 8, 1999 (doc. 8), arguing that Plaintiff cannot satisfy his burden to show that (1) Defendant had notice or knowledge of a possible risk or hazard as a result of boots with speed-lace hooks; or (2) Defendant could have foreseen or in fact had notice or knowledge of the allegedly defective condition of the ¾ switch.

Defendant also filed a supplemental answer alleging that Plaintiff has failed to reasonably mitigate any damages sustained by him (doc. 21).

Plaintiff responded in opposition to Defendant's motion on August 9, 1999 (doc. 12). In his response, Plaintiff contends that Defendant was on notice of the potential dangers of speed lace hooks or should have at least foreseen a possible injury from the speed lace hooks. Plaintiff also asserts that Defendant failed to establish as a matter of law a lack of foreseeability and notice of the defective ¾ switch (*Id.*). The Court notes that, on October 15, 1999, we granted Plaintiff's motion to continue the trial date until April of 2000 (doc. 17).

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of a non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific

facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, " 'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

■ In a motion for summary judgment, Defendant argues that Plaintiff failed to raise genuine issues of material fact that would allow a factfinder to conclude it is liable under the FELA, Title 45 U.S.C. § 51. Section 51 of the FELA provides, in pertinent part, that:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. As the above language indicates, FELA establishes a duty on the part of a common carrier to use reasonable care in providing employees a safe work environment. *See Bailey v. Central Vermont Ry,* 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943); *Adams v. CSX Transp., Inc.,* 899 F.2d 536, 539 (6th Cir. 1990). Ensuring that employees have proper equipment with which to perform their work assignments falls within this duty. *Rodriguez v. Delray Connecting R. R.,* 473 F.2d 819, 821 (6th Cir.1973). Moreover, a common carrier must take reasonable precautions, including inspections of its property and equipment, to protect its employees from potential harm. *Cazad v. Chesapeake & Ohio Railway, Co.,* 622 F.2d 72, 75 (4th Cir.1980); *see also Shenker v. Baltimore & Ohio Ry. Co.,* 374 U.S. 1, 10, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963).

Courts generally construe the FELA liberally to allow employees to recover even if the employer's negligence is arguably minimal. *Rodriguez,* 473 F.2d at 820; *see also Rogers v. Missouri Pac. R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (stating that the test of a jury case is whether the evidence reasonably justifies "the conclusion that employer negligence played any part, even the slightest, in producing the injury"). Nonetheless, a plaintiff must " 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.' " *Adams,* 899 F.2d at 539 (quoting *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987)). Moreover, " '[a]n employer's duty of care in a FELA action turns in a general sense on the reasonable foreseeability of harm.' " *Long v. CSX Transp., Inc.,* 849 F.Supp. 594, 596 (S.D.Ohio 1993) (quoting *Ackley v. Chicago & North Western Transp. Co.,* 820 F.2d 263, 267 (8th Cir.1987)).

In the following sections, the Court examines whether any genuine issues of material fact exist as to the essential ele-

ments of Plaintiff's FELA negligence claims against Defendant.

### A. The March 27, 1995 Incident

In his claim related to the speed-lace work boots, Plaintiff contends that Defendant failed to provide safe equipment and thereby breached the duty it owes Plaintiff under the FELA (*see* docs. 1 & 12). Plaintiff contends that Defendant breached its duty of care because (1) "the speed lace hooks were inherently dangerous" and "the potential for injury was clearly foreseeable"; and (2) Defendant "had actual notice of the problems with the hooks" (*Id.*).

▪ As noted above, a common carrier must provide its employees with safe equipment. *Rodriguez*, 473 F.2d at 821. In order to prevail on a claim of defective equipment, a plaintiff must demonstrate that the defendant had actual or constructive notice of the defect prior to the accident or the plaintiff must show that such an injury was reasonably foreseeable to the defendant. *See, e.g., Baynum v. Chesapeake & Ohio Ry. Co.*, 456 F.2d 658, 660 (6th Cir.1972); *Adams*, 899 F.2d at 539; *Long*, 849 F.Supp. at 597. Thus, as to the March 27, 1995 incident, Plaintiff must prove either that Defendant had actual or constructive notice of the potential danger of speed-lace hooks or that an accident from use of the speed-lace hooks was reasonably foreseeable.

In regards to actual notice, Plaintiff avers that he is still developing the evidence necessary to support his assertion that Defendant in fact knew speed-lace hooks are dangerous (doc. 12). Nonetheless, Plaintiff contends that summary judgment is inappropriate because of the inherent hazardous nature of speed-lace hooks. Plaintiff relies upon *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 113–117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), to support his claim. In *Gallick*, the Court found that a jury could reasonably conclude that an employer was negligent in forcing its employees to work near a " 'stagnant,

vermin-infested pool of water' " without direct evidence or even substantial circumstantial evidence that an insect originating from the pool bit and infected the employee. *Id.*, 372 U.S. at 113–14, 83 S.Ct. 659. The Court found that a jury could reasonably infer negligence after weighing conflicting circumstantial evidence based on the nature of the alleged negligent condition and the injury. *Id.* at 114–16, 83 S.Ct. 659. Likewise, Plaintiff alleges that a jury could infer in this case that speed-lace hooks are inherently dangerous and that Defendant could have reasonably foreseen an injury.

Nonetheless, Defendant argues that Plaintiff's citation to *Gallick* is inapposite. Defendant asserts that *Gallick* does not indicate that a railroad-employer would be negligent for its distribution of a certificate that allows an employee to obtain a free pair of work boots of the employee's choosing. Defendant emphasizes that the railroad company did not require that a particular brand or style of work boots be purchased or that a particular store be patronized. Defendant further insists that it did not coerce Plaintiff specifically into purchasing or wearing work boots with speed-lace hooks; rather, Plaintiff selected the style of boot on his own.

Moreover, Defendant contends that Plaintiff fails to raise any genuine issues of material fact indicating that Defendant knew or should have known about a possible risk or hazard related to speed-lace hooks. For instance, Defendant notes that, although Plaintiff alleges that he told a supervisor about a problem with speed-lace hooks, Plaintiff cannot identify this supervisor. Furthermore, Defendant argues that Plaintiff fails to identify any evidence that would contradict the testimony of James R. Woody. Mr. Woody, who at the time of Plaintiff's injury conducted Safety and Rules Training Programs for CSX, avers that he did not know of any potential hazard from the speed-lace hooks (doc. 8, Woody Aff.). In addition, Defendant points out that Plaintiff did not con-

tradict the testimony of Ms. Sater, an employee of the Red Wing Shoe Company, Inc. Ms. Sater attests that her review of company statistics and records failed to yield any complaints about speed-lace hooks (doc. 8; Sater Aff.).

█ After reviewing this matter, we find Defendant's arguments persuasive. The Court agrees that Plaintiff fails to raise genuine issues of material fact regarding the breach of duty, foreseeability, and causation elements of his negligence claim related to speed-lace hooks. Plaintiff did not demonstrate how a reasonable jury could find that Defendant was on actual or constructive notice of the alleged danger of speed-lace hooks nor did Plaintiff show that an accident from the use of speed-lace hooks was reasonably foreseeable. Accordingly, this Court hereby GRANTS Defendant summary judgment as to Plaintiff's claim related to speed-lace hooks.

### B. The December 5, 1996 Incident

Plaintiff next claims that Defendant was negligent in failing to meet (1) its duty of inspection as to the ¾ switch in the New River Yard (doc. 1) and (2) its duty to provide safe methods of dealing with difficult switches (doc. 12).

As with his claim related to the speed-lace hooks, Plaintiff bears the burden of demonstrating that Defendant had actual or constructive notice of a defect on the work premises or equipment prior to Plaintiff's injury. *See, e.g., Peyton v. St. Louis Southwestern Ry.*, 962 F.2d 832, 833 (8th Cir.1992); *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824, 826 (2d Cir.1994). Plaintiff must also show that Defendant could reasonably foresee the danger arising from the defect. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943); *Adams*, 899 F.2d at 539. Defendant's conduct " 'is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition.' " *Long*, 849 F.Supp. at 596 (quoting *Ackley*, 820 F.2d at 267). Generally, the employer's duty increases as the risk to the employees increases. *Id.* at 596–97.

In support of his claim, Plaintiff alleges that Defendant did not properly inspect the ¾ switch prior to his injury. Plaintiff contends that *Shelton v. Thomson*, 157 F.2d 709, 710 (7th Cir.1946), establishes that occasional and irregular inspections are inadequate to meet a railroad's duty to make reasonable and proper inspections. From this, Plaintiff argues that Defendant must disclose maintenance and inspection records related to the ¾ switch. Defendant's failure to do so, Plaintiff insists, means that summary judgment is inappropriate on this claim. Moreover, although the allegation is not found in his Complaint, Plaintiff now asserts that Defendant's method of dealing with difficult switches—namely, by stepping on them—is dangerous.

Defendant counters that Plaintiff fails to produce any evidence from which a jury could reasonably conclude that Defendant was negligent in maintaining the ¾ switch or in allowing an employee to step on a difficult switch. Defendant concedes that the ¾ switch was defective due to a low tie (*see* doc. 8). Nonetheless, Defendant asserts that Plaintiff did not produce any evidence indicating that a routine visual inspection of the ¾ switch would have revealed the defect. Therefore, Defendant argues that the holding in *Shelton* is inapposite to the case at bar. In *Shelton*, the court found that the defendant should have inspected the engine of a working crane months before its employee was poisoned by leaking carbon monoxide gas. *Id.*, 157 F.2d at 710. The defective condition in *Shelton*, Defendant contends, is distinguishable from the condition in this case in that the evidence indicates a problem in the ¾ switch could only have been detected upon actual operation. Defendant asserts that Plaintiff cannot contradict that evidence.

In support of its arguments, Defendant proffers the affidavits of Mr. Swigart and Mr. Reynolds (doc. 8, Swigart & Reynolds Affs.). These CSX employees attest that the defective condition of the ¾ switch was not apparent by visual inspection, that there were no prior problems at the ¾ switch, and that the inspection of the switch did not enable them to determine the length of time the switch had been in a defective condition (*Id.*). In addition, Defendant notes that Plaintiff acknowledges in his deposition that, although the switch was thrown on the average of once a day (Barger Dep. at 82), he cannot find any evidence to show that someone knew or should have known about the defect in the ¾ switch (*Id.* at 117–19). From this, Defendant argues that Plaintiff fails to establish that (1) at a time before the accident, an inspection would have disclosed the problem, or (2) someone from CSX Transportation, Inc. negligently failed to detect the problem or failed to report and repair the problem (doc. 14).

Defendant further argues that the number of unruly switches is not relevant since Plaintiff acknowledges that he had never encountered a problem with the particular ¾ switch involved in this case prior to the December 5, 1996 incident (Barger Dep. at 87). In addition, Defendant maintains that nothing exists in the record to show that the practice of stepping on a switch lever is unreasonably hazardous.

After reviewing this matter, we find Defendant's arguments persuasive. Plaintiff produces no evidence indicating that Defendant failed to use reasonable care in providing its employees with a safe place to work. Plaintiff did not show any actual or constructive knowledge on the part of Defendant of a defect in the ¾ switch, nor did Plaintiff present any evidence suggesting that Defendant's method of stepping on switch levers is unreasonable or hazardous. First, undisputed evidence indicates that a defect in the switch could only be detected upon actual operation. Thus, Plaintiff fails to establish that

Defendant acted unreasonably in relying on its employees to notify the railroad company of any problems in the operation of the switch. As Defendant points out, daily operation of the switch is essentially equivalent to routine inspection. Further undisputed evidence shows that no employee had reported any problem with the ¾ switch, which was thrown about once a day.

Secondly, Plaintiff fails to show that the injury he allegedly suffered from stepping on the lever of the ¾ switch was foreseeable to Defendant. While Plaintiff need only show slight negligence on the part of Defendant to avoid dismissal in a FELA action, *Rodriguez*, 473 F.2d at 820, Plaintiff must produce some affirmative evidence demonstrating that Defendant's negligence caused his alleged injuries. *Long*, 849 F.Supp. at 597; *see also Dent v. Consolidated Rail Corp.*, 187 F.3d 635, 1999 WL 551402, *2 (6th Cir.1999). Here, Plaintiff did not bring forth any evidence related to the method that would show Defendant knew or should have know of its potential danger to employees.

In summary, the Court finds that Plaintiff fails to raise genuine issues of material fact regarding the breach of duty, foreseeability, and causation elements of his negligence claim related to the ¾ switch and Defendant's method of stepping on switch levers. Plaintiff did not demonstrate how a reasonable jury could find that Defendant was on actual or constructive notice of the alleged danger of the defective ¾ switch or the method, nor did Plaintiff show that an accident could foreseeably result from stepping on switch levers. Accordingly, this Court hereby GRANTS Defendant summary judgment as to Plaintiff's claim related to the ¾ switch and the method of stepping on switch levers.

## CONCLUSION

After reviewing the facts of this action in a light most favorable to the non-moving party, this Court holds that no genuine

issues of material fact exist as to whether Defendant CSX Transportation, Inc. was negligent in its duty to provide a safe work environment or proper equipment for its employees. Therefore, the Court hereby GRANTS Defendant CSX Transportation, Inc.'s Motion for Summary Judgment (doc. 8) and DISMISSES WITH PREJUDICE this action.

SO ORDERED.